(No. 21373.—

AGNES M. VANPATTEN, Appellant, *vs.* FRED LOOF, Appellee.

*Opinion filed June 24, 1932—Rehearing denied October 11, 1932.*

DOUGLAS C. GREGG, for appellant.

GEORGE W. FIELD, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Agnes M. VanPatten (hereafter designated appellant) filed a bill in the circuit court of Lake county against Fred Loof (hereafter referred to as appellee) to enjoin him from interfering with the free use and enjoyment of a private driveway over certain lands of appellee. After amendments to the bill were made and answer of appellee was filed the cause was referred to a special master in chan-

cery to take the proofs and report his conclusions of law and fact. The master's report found the equities in favor of appellee and recommended a decree dismissing appellant's bill. Objections to the master's report, which stood as exceptions before the chancellor, were overruled and a decree was entered dismissing the bill for want of equity. From that decree an appeal has been perfected to this court.

It appears from the pleadings and proofs in the record that appellant is the owner of a certain parcel of land located on the south shore of Bluff Lake, in Lake county, Illinois, and about eighty rods north of a public highway extending easterly and westerly along the south line of appellee's premises and leading to Grass Lake; that she derived title to the property about 1913 by deed from her mother, who became the owner of the land under the will of appellant's father, George D. Paddock; that Paddock acquired title to the premises in 1885 by deed from Henry M. Norton and wife; that the Nortons were then, and had been since 1891, the owners of all the land surrounding the Paddock premises, including that which extends from the Paddock property to the public highway. Since 1917 appellee has been the owner of the land surrounding the Paddock property. Paddock constructed a dwelling on his property about 1885 and lived there almost continuously until he died, in 1908. Bluff Lake is a meandered lake, is navigable and is connected with Fox river. At one time Paddock ran a steamboat upon the lake, carrying excursion parties to and from different places. While he lived upon his land he crossed over the adjoining lands of Norton in going to and from the east and west public highway. There is a gravel pit on appellee's land north of the public highway and more than half way between the highway and appellant's land. Gravel is sold to the public out of it. A well-defined, level road or driveway extends from the public highway to the gravel pit. There was a gate across this road at a point near the public highway, and this gate was kept locked at

least a part of the time both before and after appellee became the owner of her land. Some of appellant's family and her agent were furnished with a key to the lock used on the gate. North from the gravel pit the driveway toward appellant's property is up and down hill and has a winding course over the hills. The proof is conflicting as to the existence of any defined road or driveway from the gravel pit to appellant's land. However, the record does show that horse-drawn vehicles or automobiles were used from time to time over a period of more than forty years by either appellant, her father, members of her family or their friends in going over appellee's land from the public highway to appellant's property or from appellant's property to the public highway. Her property is now used by her family and friends for summer cottage purposes. The north boundary of her property extends along the south shore of Bluff Lake for about 280 feet, where there is a wide and sandy beach forming one of the most desirable bathing beaches on the lake. Appellee has recently constructed one or more houses near the lake shore and immediately east of appellant's property. One of these houses was built next to appellant's east fence and obstructed the place or entrance ordinarily used to drive in and upon her property. A short time after the original bill was filed appellee constructed a fence across the driveway. The lands of appellee surrounding those belonging to appellant and lying north of the gravel pit are used by appellee, particularly in the summer season, for the holding of picnics and as a camping ground. There is evidence in the record showing that the entire shore of Bluff Lake is privately owned; that there are no public landing places on the lake shore for boats and that no public roads extend to the shore of the lake. Appellant stated there was no way of getting to her cottage without going on other people's property, though it appears that her daughter has on a few occasions reached it by boat.

Appellant and appellee derived their respective titles from the same source—*i. e.,* H. M. Norton and wife—and it is contended by appellant that her father, Paddock, having openly and notoriously used the alleged private driveway for ten years before he acquired the property from Norton, and Norton having owned it many years before he deeded it to Paddock, in 1885, the right to continue to use and have such right of way over the remaining Norton lands to the public highway was conveyed by implication by Norton to Paddock. In support of this contention counsel cites *Adams* v. *Gordon,* 265 Ill. 87, *Keen* v. *Bump,* 310 id. 218, *Hoepker* v. *Hoepker,* 309 id. 407, and *Cassidy* v. *Cassidy,* 309 id. 465. The rule pertaining to easements as announced in those cases is, that where the owner of two tenements, or of an entire estate consisting of several parts, has so arranged and adapted them that one tenement or one portion of the estate derives a benefit and advantage from the other of a permanent, open and visible character, and the owner sells a portion of the property, the purchaser will take the tenement or portion sold with all the benefits and burdens which appear at the time of sale to belong to it, and it is not necessary in such case that the easement claimed by the purchaser must be really necessary for the enjoyment of the estate granted but it is sufficient if it is highly convenient and beneficial therefor. The foundation of the doctrine of easements in such cases is a disposition and arrangement of the premises as to the uses of the different parts by him having the unity of seizin, and then a severance. No easement exists so long as there is a unity of ownership, because the owner of the whole may at any time re-arrange the qualities of the several parts, but the moment a severance occurs by the sale of a part, the right of the owner to re-distribute the properties of their respective portions ceases and easements and servitudes are created corresponding to the benefits and burdens mutually existing at the time of the sale. In the instant case,

Norton, the grantor of Paddock, had made no arrangement or adaptation of his property whereby a quasi-easement arose or was implied in favor of Paddock. So far as this record shows, neither Norton nor anyone in his behalf had anything to do with laying out, maintaining or using the alleged driveway from the gravel pit to Paddock's land, and there is nothing to show that such a way was required in connection with the use or enjoyment of any part of Norton's property. In our opinion the cases referred to and relied upon by appellant's counsel in his argument presented to this court are not applicable to the facts disclosed by this record. Doubtless Paddock and members of his family had crossed over appellee's lands on many occasions in traveling between the Paddock land and the public highway, but the proof tends strongly to show that the use of appellee's land for such purpose was permissive at all times and that there never was any well-defined way from the gravel pit to the Paddock land.

Both the master and the chancellor found that appellant's land borders upon the shore of Bluff Lake, a navigable body of water, and that she has reasonable means of ingress and egress to and from her property over the waters of the lake, and that no easement existed over appellee's land either by prescription or from necessity. The record seems to disclose that appellant's land in 1885 was best suited for use in connection with lake excursions and that there was then no necessity for an easement over appellee's land. No matter how much conditions may have changed since the time Paddock got his deed, no implication of a grant of easement can ever arise from such changed conditions. The implication, if any, must have been contemporaneous with the execution of the deed.

From our consideration of this record we are of the opinion the conclusions of the master and the decree of the chancellor were correct, and the decree will therefore be affirmed.

*Decree affirmed.*