16462

TAYLOR v. COX *ET AL.*
(63 S. E. (2d) 470)

*Messrs. Wyche, Burgess & Wofford,* of Greenville, *for Appellant,*

*Messrs. Price & Poag and Ralph W. Drake,* of Greenville, *for Respondents,*

*Messrs. Wyche, Burgess & Wofford,* of Greenville, *for Appellant, in Reply,*

February 6, 1951.

L. D. LIDE, Acting Associate Justice.

This case comes to us upon an appeal by the plaintiff from the order of Hon. W. B. McGowan, Judge of the Greenville County Court, dated March 21, 1950, in favor of the defendants. This is a road case involving a rather ancient neighborhood road in Greenville County, which was known as the Paper Mill Road, as well as certain other roads and easements therein. (The appellant will generally be referred to herein as the plaintiff, and the respondents as the defendants.)

The action was commenced in October, 1949, in the Greenville County Court, to enjoin the defendants from obstructing and interfering with the plaintiff's alleged right of travel upon the aforesaid Paper Mill Road, and also for damages resulting from the obstruction thereof by the defendants. The defendants in their answer denied the plaintiff's alleged rights, and prayed that the complaint be dismissed, and also sought an injunction against the plaintiff with regard to any use of, or interference by him with, the land of the defendant Mrs. Elizabeth V. Cox, and for damages resulting from the temporary injunction previously granted by the Court.

It is agreed, as shown by the statement of the case in the transcript of record, that the course of the Paper Mill Road, as claimed by the plaintiff, is from the Augusta Road to the Fairfield Road through a sixty-five (65) acre tract of land owned by the defendant Elizabeth V. Cox, who will frequently be referred to herein as Mrs. Cox; and it should be stated that the defendant W. R. Julian is made a party as her tenant.

The land owned by the plaintiff contains ten acres, more or lesss, and is usually referred to as the ten acre tract, although it is sometimes called the ten and a half acre tract. According to the deeds of both the plaintiff and Mrs. Cox, the boundary separating the ten acre tract from her lands is the Paper Mill Road; and quoting from the aforesaid statement in the transcript of record; "There are two modes of access to the ten acre tract of the plaintiff; one, the Paper

Mill Road from the Augusta Road and the Fairfield Road; the other, a short road from the Fairfield Road to the ten acre tract."

The testimony in the cause, which is quite voluminous, was taken before Judge McGowan, and thereafter he (quoting) "viewed the land of the plaintiff and the defendant, Elizabeth V. Cox, and the course of the Paper Mill Road from the Augusta Road to the Fairfield Road in the company of the plaintiff, his attorney, and counsel for the defendants in accordance with an agreement of counsel."

It is clear from the trial Judge's order, in the light of the testimony, that the Paper Mill Road was originally a *neighborhood road* and therefore a public way, although it was never accepted or maintained by the public authorities; and that the same originally ran from one highway to another, and that it formerly afforded the only access to the plaintiff's property fronting thereon. There is much testimony, pro and con, as to the use of portions of the Paper Mill Road, but the trial Judge concludes, and we think correctly, that the same was actually abandoned as a public road many years ago, including that part thereof involved in the instant case. The following extended quotation from Judge McGowan's order appears to be well supported by the preponderance of the evidence:

"The Eastern portion of the road from the Augusta Road to the Fork Shoals Road has long since been abandoned. It is cultivated over, and, twenty-five years, or more, a dwelling has rested in its course. There is little evidence of its original existence. Likewise, the Western portion of the old road between the White Horse Road and the Fairfield Road has been in a state of non-use for many years, and now is under cultivation. The remaining course of the old road between the Fairfield Road and the Augusta Road has fallen into such a bad state of repair as to become virtually impassable for some distance approaching the entrance to the Fairfield Road.

"H. W. Childs acquired in 1918 the ten acre tract now owned by the plaintiff. Mr. Childs lived on the Augusta Road near the outlet of the Paper Mill Road, and proceeded to use the old road in passing to and from the ten acre tract across the property then and now owned by Elizabeth V. Cox. From the beginning Mrs. Cox disputed his right to use the old road, but later an agreement was reached between them whereby Childs was to use the old roadway so long as he should own the ten acre tract.

"That arrangement prevailed until 1925 when the county authorities built the New Fairfield Road from the White Horse Road to the Augusta Road. The new road crosses the Cox property, is more or less parallel to the old road, and lies about three hundred yards North of it. It passess approximately within seventy-five yards of the Northern boundary of said ten acre tract. The old road was immediately adjacent to that tract on the South. The new improved road adequately served the public and no further use was made of the old road, except by those going to and from the ten acre tract. Thereupon, it could safely be said· that the old road was abandoned and lost its character as a public way."

The trial Judge, however, recognized the well settled rule that even upon the abandonment of a public way, abutting property owners may, under some circumstances, have a private easement in the old road as a means of ingress and egress to and from their abuting lands; and in our rather recent case of *Andrews v. McDade,* 201· S. C. 24, 21 S. E. (2d) 202, the whole matter of abandonment of public highways is considered, and it is therein held that ordinarily where a public highway is abandoned, the title thereto, to the center of the road, remains vested in the abutting property owners on either side, but any easement theretofore existing in such owners in the remaining one-half of the highway is thereby extinguished; except (quoting) "in a case in which the facts would require that the rule

give way to the paramount right of necessity." But, as found by the trial Judge, and indeed, this is the heart of the appeal before us, H. W. Childs, the owner of the plaintiff's ten acre tract in 1925, when the Fairfield Road was constructed by the Greenville County authorities, entered into a parol agreement with the defendant Elizabeth V. Cox, whereby he agreed to abandon and relinquish his right to the use of the old road across Mrs. Cox's property to the Augusta Road, in consideration of her providing for him another outlet across her property, to the Fairfield Road. And indeed, the evidence is undisputed that a new outlet was actually constructed, and the testimony shows that this was done under the supervision of Mr. Childs and with his approval; and the trial Judge found that such easement as Mr. Childs may have formerly enjoyed in the old road was thereby relinquished and was never revived.

The validity of such an agreement is rather strikingly shown by the old case of *Lawton v. Tison,* 12 Rich. 88, wherein the Court held, as correctly shown by the syllabus: "Where A. has acquired a legal right to the use of a road over B.'s land, a new road may, by parol agreement between them, be substituted for the old—the act of opening the new road by B. being a dedication of it to the use of A." See also 27 Am. Jur. 1022.

Consequently, the order of the trial Judge concludes by denying the relief sought by the plaintiff, and granting "the counter-injunctive relief sought by the defendant, Elizabeth V. Cox". But it was also held that Mrs. Cox was not entitled to any damages.

The exceptions of the appellant to the order of Judge McGown are seven in number, but in the brief of his counsel they are summarized in three questions, to each of which due consideration has been given.

The first question is as follows:

(1) *"Did the Court err in permitting the respondent, Elizabeth V. Cox, to testify that in 1925 she made a parol agreement with H. W. Childs, deceased, one of appellant's predecessors in title, whereby Childs agreed to abandon and relinquish his right to use the old Paper Mill Road in consideration of Mrs. Cox providing him another outlet across her property?"*

This question states the vital issue in the case. It will therefore be necessary for us to refer in some detail to the testimony of the defendant Mrs. Elizabeth V. Cox, who stated that in 1925 the Fairfield Road hereinbefore mentioned was constructed under the supervision of the Greenville County Supervisor, and that she was somewhat responsible for procuring this road, having circulated a petition requesting that it be constructed. H. W. Childs was then the owner of the ten acre tract, and we quote the following from Mrs. Cox's testimony relating to a transaction between her and Mr. Childs at the time the Fairfield Road was being built:

"Q. Your conversation concerned your giving Mr. Childs an easement over your property from the Fairfield Road up to his ten and a half acres? A. Yes, sir.

"Q. As a result of that conversation was a road cut from the Fairfield Road up to the ten and a half acres? A. Yes, sir; and Mr. Childs supervised it with Mr. Richardson there on the road with his machine.

"Q. How wide a road was cut? A. He wanted it eighteen feet, and I didn't object.

"Q. There has been testimony that this road was not on your property, state whether or not it was on your property? A. It was cut on my property with the understanding he would not use my farm road any more.

"*By Mr. Wyche:* I object to that.

"*The Court:* Yes; strike that out."

The road referred to in this testimony as extending from the Fairfield Road to the plaintiff's tract is the same as that

mentioned in the agreed statement in the transcript of record as "a short road from the Fairfield Road to the ten acre tract"; and is rather frequently referred to in the record as the "easement road".

We also quote the following from the testimony of Mrs. Cox: "Q. I want you to tell the Court this, after the Fairfield Road was built and the easement road was given Mr. Childs up to his ten and half acres, did he after that time use the farm road across your field? A. Not to my knowledge."

The "farm road" referred to by Mrs. Cox appears from her testimony to have been a road provided by her for the use of her tenants only, located in part upon her land which had never been included in the old Paper Mill Road, but also following in part the location of such old road across the field of Mrs. Cox, although often changed in the process of plowing the field.

Finally, we quote the following additional excerpt from the testimony of Mrs. Cox:

"Q. This easement road, I believe you stated the other day that you were present when the Fairfield Road was being built? A. Yes.

"Q. You further testified that you were present when the easement road was built? A. I was there the day Mr. Childs and Mr. Richardson, the County man, staked it off, then the next day they put their machine up there because up next to the road it sloped and they had to cut down and grade the road.

"'Q. You saw the machine when you went there? A. I wasn't there the whole time.

"Q. You saw the machine there? A. I did.

"'Q. I believe you stated that the easement road was made at the same time the Fairfield Road was made? A. It was."

It will be observed from the first quotation above made from the testimony of Mrs. Cox that counsel for the plaintiff objected to the same, but without stating the grounds of his

objection; and that the Court then ruled that the testimony should be striken out; but it appears that later a like objection was made to somewhat similar testimony and the Court admitted it "subject to the objection"; which we assume meant that it was subject to further consideration. However, the order of Judge McGowan made no reference to these objections or to his previous rulings thereon, but he treated the testimony as being relevant and competent, and indeed the same constitutes the main basis of his decision.

Counsel for the appellant earnestly contend, however, that this testimony was in violation of the provisions of Code Section 692, which is sometimes called the "dead man's statute". It is true that H. W. Childs died about 1935, long prior to the hearing in this cause. And it is also true that Mrs. Cox is a defendant and is a directly interested party. But the plaintiff is not prosecuting the action "as executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person", although counsel for the appellant argue that he is the *assignee,* within the meaning of the law, the word *assignee* being in effect the same as *grantee.*

But the fallacy of counsel's position will be seen by reference to the plaintiff's chain of title to the ten acre tract, as set forth in the transcript of record, which is as follows: (1) Deed of Marie S. Tripp to Albert Taylor (plaintiff), dated December 30, 1944; (2) deed of A. K. Park to Marie S. Tripp, dated October 31, 1938; (3) deed of E. Inman, Master, to A. K. Park (conveying the land as that of H. W. Childs), dated February 12, 1938; and (4) deed of H. C. Wood to H. W. Childs, dated January 10, 1918.

This chain of title definitely shows that the plaintiff is the assignee (or grantee) of Marie S. Tripp, but clearly he is not the assignee (or grantee) of H. W. Childs, who was merely one of his predecessors in title.

The rule of law in a case of this character is very clearly laid down in the rather old case of *Cantey v. Whitaker,* 17

S. C. 527, wherein the opinion was delivered by the illustrious Mr. Justice McGowan, from which we quote the following:

"The plaintiff now owns and is suing to recover the land, which was owned by Adamson at the time of the alleged 'transactions' with him, as to which it is claimed that those 'transactions' gave the defendant rights, and the said Adamson being now dead and unable to make his own statement, it would seem that the testimony comes within the principle of the rule which excludes testimony as against one suing as assignee of property in question. But whilst, as it seems to us, the plaintiff as alienee is within the mischief intended to be remedied by the exception, she is not within its express terms. She is third or fourth alienee of the land from the deceased person, but she is neither 'executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor' according to the terms of the exception, which enumerated those intended to be excepted, and this Court, whose only duty it is to declare the law, cannot amend it so that its terms will embrace a case, which we may suppose to be within the principle upon which the law was founded, but not within its express terms."

Consequently, the Supreme Court held that the Circuit Judge was in error in excluding the proffered testimony, and hence the case was reversed and remanded for a new trial.

A somewhat later case, which also seems to be directly in point, although the situation of the parties is converse to that in the *Cantey case,* is that of *Rapley v. Klugh,* 40 S. C. 134, 18 S. E. 680, and the ruling of the Court therein is correctly stated in the syllabus as follows:

"A plaintiff in the action and one under whom she claims her rights to the land in dispute, are not incompetent witnesses, under section 400 (now Section 692) of the Code of Procedure, to transactions between them and one now deceased, where the defendant defends as fourth grantee in succession from the executor of such deceased person, the

defendant not being named in the proviso to section 400 (now Section 692) in any of the classes against whom such testimony by a party in interest is interdicted."

These two cases have often been cited with approval, and we find no case where they have been modified or overruled.

Counsel for the appellant cite the case of *Palachucola Club v. Withington,* 159 S. C. 446, 157 S. E. 621, wherein it is rightly held that a *grantee* of a decedent is the same as an *assignee thereof,* within the meaning of Code Section 692; but it is of interest to observe, as will appear by reference to the opinion in that case, delivered by Mr. Justice Bonham, that the "transaction" involved therein was between the defendant (who sought to prove it by his parol testimony) and the plaintiff's *immediate* grantor, who had died prior to the trial.

It follows therefore that the appellant's first question should be answered in the negative, that is to say, that the testimony of Mrs. Cox with reference to her transaction with H. W. Childs, deceased, was not inadmissible, but was relevant and competent, and hence there was no error in this respect on the part of the County Judge.

The second question is as follows: (2) *"Did the Court err in finding that in 1925 a parol agreement was made between H. W. Childs, deceased, one of appellant's predecessors in title, and the respondent, Elizabeth V. Cox, whereby Childs agreed to abandon and relinquish his right to use the old Paper Mill Road in consideration of Mrs. Cox providing him another outlet across her property?"*

Counsel for the appellant, in their brief, treated this question as involving basically the same legal principles as the first question, and we think it is manifest that this question should likewise be answered negatively, for the evidence is clear that this parol agreement was duly made.

We are of course well aware that while the testimony of Mrs. Cox as to this transaction was relevant and competent, the fact of her interest in the matter should properly be considered as bearing upon the weight and probative value of her testimony. But it should be observed that the circumstances tend strongly to support the same, including the actual construction of the "easement road."

The third and last question referred to in the appellant's brief is as follows:

(3) *"Was there sufficient evidence to sustain the finding of the Judge that H. W. Childs, deceased, one of appellant's predecessors in title, in 1925 abandoned and relinquished his right to the use of the Paper Mill Road in consideration of Mrs. Cox providing for him another outlet across her property?"*

We are of opinion after a careful review of all the evidence in the case that this question should be answered affirmatively, that is to say, the evidence, by the preponderance thereof, is quite sufficient to sustain the trial Judge's finding that Mr. Childs duly abandoned and relinquished his right to the use of the Paper Mill Road in consideration of Mrs. Cox providing for him another outlet across her property, to wit, the "easement road" hereinabove referred to.

Counsel for the appellant quoted in their brief, in this connection, certain portions of the testimony given by the plaintiff and some witnesses in his behalf, which, upon consideration thereof, we think are manifestly insufficient to show that Mr. Childs repudiated his agreement or to impeach the trial Judge's findings. One of these witnesses was Mrs. H. W. Childs, who testified that they (she and her husband) had "no way at all" to get to the ten acre tract except by the use of the Paper Mill Road, but this testimony must be limited by the circumstance that after the construction of the "easement road" in 1925, it is admitted, as shown by the statement in the transcript of record, that there were two modes of access to the ten acre tract, one the old Paper Mill

Road, and the other, "the short road from the Fairfield Road to the ten acre tract".

Having duly reviewed all the findings of fact as well as the law in this case, we find that the findings of fact by the trial Judge are clearly in accordance with the preponderance of the evidence; and that his conclusions of law are likewise correct, for the reasons hereinabefore stated.

Counsel for the respondents gave notice of three "sustaining grounds", but we think these grounds are plainly academic, and hence require no discussion.

The exceptions are overruled and the judgment of the County Court is

Affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.