(No. 54458.—

WILLIAM G. REXROAT *et al.,* Appellees, v. RUSSELL THORELL, Appellant.

*Opinion filed January 21, 1982.—Rehearing denied March 25, 1982.*

Eugene R. Wedoff, of Chicago (Jenner & Block, of counsel), for appellant.

Daniel P. Nagan, of Macomb (Bisbee & Nagan, of counsel), for appellees.

JUSTICE UNDERWOOD delivered the opinion of the court:

This action involves a dispute over the right of the plaintiffs, William G. and Mary Ruth Rexroat, to use an old dirt roadway across land owned by the defendant, Russell Thorell, as a private right-of-way to gain access to some seven acres of plaintiffs' farm. Plaintiffs filed a complaint in the circuit court of McDonough County seeking a declaratory judgment, injunctive relief and money damages. That complaint was dismissed by the trial court, which stated in a

written opinion its reasons for doing so. The appellate court reversed and remanded (90 Ill. App. 3d 311), and we allowed defendant's petition for leave to appeal.

The parties own adjoining farms in McDonough County. Plaintiffs purchased theirs in 1960 and 1961; defendant bought his property in 1968. Plaintiffs' farm is directly west of and adjacent to the 80-acre tract owned by defendant. Three public highways form a "U" shape around both farms. The following rough diagram, adapted from defendant's petition for leave to appeal, shows the relevant portions of the land and is helpful in understanding the physical arrangement.

In the northeast corner of plaintiffs' farm is a tillable triangular-shaped piece of ground consisting of about seven acres. This portion of the farm is bounded on the northwesterly side by Spring Creek, on the east side by the common property line between the parties, and on the south by an old dirt road which at one time ran through the property now owned by defendant. A portion of the land south of the old road and east of Spring Creek was sold by plaintiffs,

who reserved a 16-foot easement across the conveyed land for purposes of ingress and egress to the land, including the seven acres, retained by plaintiffs. That easement commenced at the south public highway midway between Spring Creek and the west boundary of defendant's property, and ran almost due north to plaintiffs' retained land.

The old road, according to the plaintiffs and as described by the trial court, "began approximately an eighth of a mile south of the northeast corner of defendant's 80 acres and on the west line of the East Public Highway and *** then continued on westerly approximately an eighth of a mile and then in a generally southwesterly direction to the common boundary line between the farms owned by plaintiff[s] and defendant. The old road *** then proceeded westerly across plaintiffs' land to Spring Creek and thence on westerly entirely across what is now plaintiffs' land and then on northerly, westerly, southerly and back westerly until it connected up with the West Public Highway at a point about 1¼ miles due west of where the old road began at its eastern terminus over the East Public Highway." Both parties have maintained fence gates at the points where the old road begins on their respective properties: at the east end of the old road where it begins on defendant's property, a fence gate has existed since the time plaintiffs purchased their property in 1961, and some years prior thereto; at the point where the old road leaves defendant's land and enters plaintiffs' farm, a fence gate has also existed for an appreciable length of time, and after plaintiffs acquired their land they painted a "keep out" sign on their fence post directed at anyone coming from defendant's land.

At the point where the old road crossed Spring Creek there was a ford; however, testimony indicated that the creek had substantially changed over the years, in that the banks are now much steeper and the creek much deeper. William Rexroat testified to unsuccessful attempts to drive a

bulldozer and farm machinery across the creek where it intersects the old road to reach his seven acres. He also testified to unsuccessful attempts to reach the seven acres from the south public highway along the east side of Spring Creek. He and Wally Lundberg, plaintiffs' immediate predecessor in title, testified that there was a swamp in this area and the land frequently flooded in the spring.

No recorded document indicated the road existed. The portion which ran through defendant's land had been used by the public for some years beginning in about 1913, but, as the trial court found, it had not been maintained since at least 1942 and had grown up in saplings and been obstructed by falling trees. The parties generally agreed that the portion of the road which did not run through defendant's land, with the exception of a small portion at the west end, had been abandoned as a public road many years before they purchased their respective properties. The defendant testified that at the time he purchased his land, there was no visible indication that a road existed on it. However, both William Rexroat and Wally Lundberg testified that they used the road on several occasions. But Lundberg stated that the road was not in good condition in 1951 when he purchased his property, and plaintiff testified that he had to perform major work on the road by removing dead trees and logs and grading the road in order to make it passable. In addition, portions of the road periodically washed out to the extent that passage became blocked.

Plaintiffs based their claim for relief upon four possible theories: (1) that a private easement existed by way of necessity; (2) that a private easement existed by prescription; (3) that a public highway still existed, or, in the alternative, (4) if a public highway no longer existed, that a private easement of necessity arose following the abandonment of the road by the general public. The trial court held that a public highway had been created by user for more than 15 years (Ill. Rev. Stat. 1977, ch. 121, par. 2—202), but

that it had been abandoned sometime in 1942 or 1943. Neither party challenges these findings on appeal. The court rejected the plaintiffs' claim that an implied easement of necessity existed, because there was no evidence that the plaintiffs' and defendant's tracts had been part of one estate initially and subsequently severed as required to create such an easement. (See *People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 270; *Finn v. Williams* (1941), 376 Ill. 95, 99.) The court also rejected plaintiffs' claim that they had acquired an easement by prescription, finding that any use by plaintiffs and their predecessor in title, Wally Lundberg, was permissive—at least until 1968. Finally, the court held that a private easement did not arise following the abandonment of the public roadway because the judge found no support in Illinois law for this proposition. On rehearing, the court further stated that plaintiffs' argument on the necessity of an implied easement was substantially diluted by the fact that William Rexroat testified he had retained an express easement for the purpose of reaching the seven-acre tract across land sold by plaintiffs. He stated he did so because of the "questionable nature" of his right to use the old road.

The appellate court reversed, holding that the abandonment of the public roadway under these facts created a private easement in the road benefiting plaintiffs' land. In so holding, the court relied primarily upon several out-of-State decisions collected in an A.L.R. annotation. (See Annot., 150 A.L.R. 644 (1944).) The court rejected the claim that the possibility of alternative means of access should defeat plaintiffs' right to an implied easement: "Under these circumstances the fact that alternative means of access may be possible, *i.e.*, via construction of a bridge across Spring Creek or by developing a roadway running north along the east bank of Spring Creek from the public highway abutting the southern boundary of plaintiffs' land, both costly and complicated procedures, does not alter our decision. The plaintiffs' rights to an easement implied by law need not be

based on absolute necessity." 90 Ill. App. 3d 311, 315.

The only issue raised in this court is whether plaintiffs have acquired a private easement in the old road from reasonable necessity by virtue of its abandonment as a public highway several years prior to the time they purchased their land. Defendant urges reversal of the appellate court's holding in part because plaintiffs failed to show reasonable necessity. Plaintiffs contend that the record supports their assertion that the cost of constructing an alternative means of access is prohibitive and that the appellate court's finding that such procedures are both complicated and costly should be sustained.

The majority of courts considering a landowner's rights following the vacation or abandonment of a public way have held that a private right-of-way which existed prior to the establishment of a public way survives the vacation or abandonment by the public. (See Annot., 150 A.L.R. 644, 645-46 (1944); cf. *Thomas v. Metz* (1928), 236 Ill. 86 (*dicta* sometimes cited as supporting plaintiffs' position); see also 39 Am. Jur. 2d *Highways, Streets, and Bridges* § 185 n.17 (1968).) Moreover, many courts have held that a private easement arises in a public highway following its vacation or abandonment from the mere fact that the landowner's property abuts thereon. (*E.g., Knierim v. Leatherwood* (Tenn. 1976), 542 S.W.2d 806, 810-11; *Jackson v. Birmingham Foundry & Machine Co.* (1908), 154 Ala. 464, 45 So. 660; Annot., 130 A.L.R. 657, 658 (1941).) Although title to the land vests in the owner of the fee, it is subject to the rights other landowners may have in the street as the necessary means of access to their property. (*Greenberg v. L. I. Snodgrass Co.* (1954), 161 Ohio St. 351, 361, 119 N.E.2d 292, 297; *Taylor v. Cox* (1951), 218 S.C. 488, 492, 63 S.E.2d 470, 472.) It is thus recognized that the only easements which survive or arise are those reasonably necessary for means of ingress and egress. *Taylor v. Cox* (1951), 218 S.C. 488, 63 S.E.2d 470; *Jackson v. Birmingham Foundry &*

*Machine Co.* (1908), 154 Ala. 464, 45 So. 660; 39 Am. Jur. 2d *Highways, Streets, and Bridges* § 185 (1968); 39A C.J.S. *Highways* § 137 (1976).

The above principles are not directly applicable to the factual situation with which we are presented, as the appellate court noted, because there is no evidence that a private easement existed prior to the creation of the public way, and the old road does not abut the plaintiffs' land but runs to and through it. Application of the cited rules is further complicated by the fact that the roadway at issue here was never publicly recorded in contrast to the overwhelming majority of out-of-State decisions. The record demonstrates that the road fell into a state of disrepair following its abandonment by the public, and it became impassable until later efforts were made to clear it. Such a situation may well present the question whether the owner of the servient tract had either actual or constructive notice of the possibility of a claimed easement over his land. Without that notice, of course, he ordinarily takes title free from the burden of the easement. (See *Willoughby v. Lawrence* (1886), 116 Ill. 11, 20; 25 Am. Jur. 2d *Easements and Licenses* § 97 (1966).) In this case, whether the condition of the land was such as to give defendant reasonable notice of the roadway was sharply disputed, and the trial court did not make a specific finding on this issue. We need not remand on this question, however, since we believe that plaintiffs failed to sustain their burden of showing necessity.

Plaintiffs purchased their land some 18 years following the abandonment of the old road by the general public. If a private easement existed at the time plaintiffs acquired this land, it arose in the early 1940's when the trial court found that the old road was abandoned by the public. Since none of plaintiffs' predecessors in title sought to enforce such a right, it was incumbent upon the plaintiffs, whose burden it is to show facts necessary to create an easement by implication (*Traylor v. Parkinson* (1934), 355 Ill. 476, 479; *Bontz v.*

*Stear* (1918), 285 Ill. 599, 604), to prove that the circumstances were such that at the time the public road was abandoned a private easement arose. If the necessity to use this road to gain access to the seven-acre portion of their farm arose because of changed conditions upon the plaintiffs' land, 'as the record would indicate, their claim must fail.

In *VanPatten v. Loof* (1932), 349 Ill. 483, the court considered whether an easement existed from necessity over the appellee's land in favor of the appellant, whose only other means of ingress and egress to his property was by means of a navigable body of water. The court determined that in 1885, several years prior to the litigation, which was the year the estate was severed, the appellant's land was best suited for lake excursions and as such there was no need for an easement over appellee's land. Thus, the court concluded:

> "No matter how much conditions may have changed since the time [appellant] got his deed, no implication of a grant of easement can ever arise from such changed conditions. The implication, if any, must have been contemporaneous with the execution of the deed." (349 Ill. 483, 487.)

(See also Restatement of Property § 474, comment *a* (1944) (implication arises upon severance)); *People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 271; *Deisenroth v. Dodge* (1955), 7 Ill. 2d 340, 346; *Walker v. Witt* (1954), 4 Ill. 2d 16, 20.) So, too, the implication in this case must have arisen, if at all, at the time of the abandonment of the old road by the general public.

While a showing of absolute necessity is not required in Illinois to create an implied easement of necessity upon the severance of land into two or more tracts (*People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 271), an easement by implication is not sanctioned if available alternatives affording reasonable means of ingress and egress exist (*Traylor v. Parkinson* (1934), 355 Ill. 476, 481; *VanPatten v. Loof* (1932), 349 Ill. 483; H. Tiffany, Real Property § 794, at

293-96 (3d ed. 1939)). Although plaintiffs presented some evidence tending to establish that it would have been costly at the time of trial in 1978 to construct a road along the east side of Spring Creek running northward from the south public highway (William Rexroat estimated that it would cost $2,000 to $3,000), or to ford the creek at the point where it intersects the old road (Rexroat estimated that it would initially cost $300 to $400 and then the channel of the creek could wash out that effort), there was no evidence presented as to the unavailability of alternative routes at the time the road was abandoned by the public. Indeed, one witness testified that in 1937 the ford in the creek provided good access but that the creek had substantially changed over the years. Moreover, even the evidence presented by the plaintiffs as to the cost and effort necessary to provide an alternative means of access from their own land was disputed by defendant, who stated that the cost and effort in fording the creek was minimal, and the trial court, while not directly deciding the question, appears to have resolved this issue against the plaintiffs. We thus hold that plaintiffs failed to establish that the use of the old roadway at the time of the public abandonment was essential to the beneficial enjoyment of the land now owned by the plaintiffs, and, therefore, a·private easement did not then arise and does not now exist.

The appellate court judgment is accordingly reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*