**Steve GRAND, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, United States of America Small Business Administration, and Spernak Airways, Inc., Appellees.**

**No. S-2098.**

Supreme Court of Alaska.

April 15, 1988.

Hugh G. Wade, Wade & DeYoung, Anchorage, for appellant.

Ronald L. Baird, Asst. Mun. Atty., and Jerry Wertzbaugher, Mun. Atty., Anchorage, for appellee Municipality of Anchorage.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

This case involves the replatting of Merrill Field by the Municipality of Anchorage. As part of the replatting process, Anchorage vacated two feeder taxiways abutting the eastern and western border of Lot 36, which Steven Grand leased from Anchorage. The superior court, granting summary judgment in favor of Anchorage, upheld the final replat which gave the entire vacated area to the lots neighboring Grand's lot, without giving any portion to Grand's lot. We reverse and find that Anchorage must extend Grand's leasehold to the centerlines of the vacated feeder taxiways.

I.

The Municipality of Anchorage and the State of Alaska owned the lands on which Merrill Field is located. On December 27, 1960, these lands were subdivided by the

recording of Plat C–217. The subdivision consisted of 38 lots and dedicated areas for public use. On March 3, 1961, Anchorage leased lots 35 and 36 to George Spernak. Spernak assigned his interest in lot 36 to Steve Grand on April 20, 1979.

Lot 36 is a square parcel, measuring 300 feet by 300 feet and bordered on all four sides by dedicated public areas. Lot 36 is bordered on the north by a general taxiway, on the south by Merrill Field Drive (a road), and on the east and west by feeder taxiways, both 50 feet in width. These feeder taxiways, which were vacated by Anchorage, are the subject of this suit.

Anchorage developed a master plan for improving and updating Merrill Field Airport. The plan was ultimately approved by the Anchorage Municipal Assembly in May of 1979 by Resolution 79–68. To prevent the conflict between aircraft and vehicle traffic which was inherent in the existing system of feeder taxiways, the plan called for vacating the north-south feeder taxiways that connected Merrill Field Drive and the general taxiway. By letter dated June 3, 1983, Joe Fouts, manager of the Merrill Field Airport, notified all leaseholders of the plan and generally explained the contemplated changes.

Grand received another letter from Fouts, dated December 3, 1983, informing Grand of the additions to his leasehold as contained in Anchorage's preliminary replat. According to the preliminary replat, Grand's lot 36 would "gain approximately 15 feet ... to the south and 25 feet to the west and 25 feet to the east" as a result of the vacation of the feeder taxiways. Enclosed with this letter was a proposed lease amendment reflecting these changes. The letter concluded by asking Grand to sign the lease amendment, granting Anchorage limited power of attorney to sign the replat, and to return it by mid-December. Grand executed and delivered the lease amendment on February 28, 1984. Shortly thereafter, Grand repudiated the limited power of attorney he granted to Anchorage.

Following a public hearing at which Grand opposed the replat before the Board, preliminary approval of the replat was given by the Platting Board on June 13, 1984. Following the approval of the preliminary replat, Grand promptly withdrew his consent to the lease amendment and appealed the decision of the Platting Board to the Municipal Assembly. The principal reason Grand opposed the replat was that it impinged on his plan to erect on his lot three hangars, situated so that aircraft could gain access to them by using the feeder taxiways. If the feeder taxiways were vacated and half of each attached to Grand's lot, his lot would be 50 feet wider. However, he would no longer have the right to use the other half of the vacated area which would otherwise have been public taxiways. Thus, the replat would decrease the width of his usable space by 50 feet.

As for the necessity of vacating the taxiways to prevent the mixing of aircraft and vehicular traffic, Grand believed that running a fence along Merrill Field Drive, which was also called for in the replat, would entirely eliminate the problem. Thus, Grand argues, vacating the feeder taxiways would not further increase safety.

Pending Grand's appeal to the Platting Board, Fouts informed Grand that Anchorage would not execute the lease amendment to lot 36 or proceed with the replat of his lot because they did not have his power of attorney. In turn, Fouts entered into lease agreements with adjoining leaseholders to lease the entire taxiways at issue "on ... the contingency that Mr. Grand would continue to refuse to sign the plat or refuse to give [Anchorage the] authority to sign the plat for him." In a letter dated September 24, 1984, Grand, through his attorney, responded to Fouts' letter. Grand requested a clarification from Fouts as to whether Anchorage intended to give Grand an opportunity to lease half of the feeder taxiways if his appeal before the Municipal Assembly was denied. Fouts did not respond to this letter.

Grand's appeal was denied by the Municipal Assembly on October 10, 1984.

Since the powers of attorney given to Anchorage by the other leaseholders were to expire on December 31, 1984, and since

the final replat was essential to receiving federal funds for the project, Fouts proceeded to obtain approval of the final replat. The platting officer granted final approval of the final replat attaching the feeder taxiways in full to lots 35 and 37. The final replat was recorded in late 1984.

Grand did not find out that the recorded replat did not attach any portion of the vacated feeder taxiways to his lot until later, apparently in January of 1985. Grand filed suit against Anchorage and the two adjoining leaseholders, Spernak Airways and the Small Business Administration,[1] in May of 1985, claiming the right to one half of the vacated feeder taxiways.

Grand and Anchorage both filed motions for summary judgment in November, 1986. The superior court granted summary judgment in favor of Anchorage.

## II.

The vesting of title to a vacated public area is clearly and unambiguously described in the Anchorage Municipal Code. The Anchorage Municipal Code provides:

> *The title to the street or other public right-of-way vacated on a plat attaches to the lot or lands bordering on the area in equal proportions*, except that if the area was originally dedicated by different persons, original boundary lines shall be adhered to so that street area which lies on one side of the boundary line shall attach to the abutting property on that side, and the street area which lies on the other side of the boundary line shall attach to the property on that side. The portion of a vacated street which lies within the limits of a platted addition attaches to the lots of the platted addition bordering on the area. If a

public square is vacated, the title to it vests in the municipality.

AMC 21.15.130(D)(1) (emphasis added). This section of the AMC applies to vacations of "public utility easement[s]" and "dedicated public area[s] other than a public utility easement." AMC 21.15.-130(B)(1)–(2). Since the feeder taxiways were dedicated, AMC 21.15.130(D)(1) applies and disposes of this case.

According to AMC 21.15.130(D)(1) vacated areas attach in equal proportions to the *lots* bordering those areas.[2] Applying this code section, we find that, upon vacation, one half of the feeder taxiways should have attached to each of the bordering lots. Since the feeder taxiways were 50 feet wide, lot 36 should have been extended on the final replat to include 25 feet of the vacated feeder taxiways on each side. Grand, as lessee of lot 36, is entitled to lot 36 *as extended* by the operation of AMC 21.15.130(D)(1). Accordingly, we reverse the superior court's grant of summary judgment in favor of Anchorage and remand for entry of judgment in favor of Grand.[3] Anchorage should amend the final replat of Merrill Field to reflect this decision. In addition, the amount of rent due and owing on lot 36 shall be determined by Anchorage and Grand in accordance with the terms of the lease.

We do not reach the other issues raised by the parties. The decision of the superior court is REVERSED, and we REMAND the case for further proceedings consistent with this opinion.

---

1. The Small Business Administration was allegedly the successor in interest to an aviation company that had previously been the leaseholder.

2. In contrast to AMC 21.15.130(D)(1) is the common law rule on vacation of public areas. At common law, upon vacation of a public street by a city, the property reverts in equal proportions to the abutting *owners* of the fee simple interest, subject only to the rights other landowners may have in the street as a necessary means of access to their property. *See Rexroat v. Thorell*, 89 Ill.2d 221, 60 Ill.Dec. 438, 441, 433

N.E.2d 235, 238 (1982); *Tanner v. Shirkey*, 5 Ohio App.3d 225, 451 N.E.2d 255, 256–57 (1982).

3. In reviewing appeals from grants of summary judgment by the superior court, we give *de novo* review. *State v. Jennings*, 555 P.2d 248, 250 (Alaska 1976). According to Civil Rule 56(c), we must affirm the superior court's grant of summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Alaska R.Civ.P. 56(c).