2016 IL App (1st) 150036

THIRD DIVISION
March 16, 2016

No. 1-15-0036

| | | |
|---|---|---|
| GEORGE P. KATSOYANNIS, M.D., | ) | Appeal from the |
| KATHRYN K. KATSOYANNIS, M.D., and | ) | Circuit Court of |
| THE NIKKI R. ALEXANDER REVOCABLE | ) | Cook County |
| TRUST, | ) | |
| | ) | |
| Plaintiffs-Appellants and Cross-Appellees, | ) | |
| | ) | |
| v. | ) | No. 10 CH 25907 |
| | ) | |
| JAMES S. FINDLAY and SUSAN E. SMALL, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendants-Appellees and Cross-Appellants. | ) | Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs and defendants are neighbors in a small subdivision in the Village of Winnetka.
The subdivision consists of 10 parcels and is bounded on the east by a private beach that runs in
front of the subdivision along Lake Michigan.  Defendants own beach front property and thus
have unfettered access to the beach year-round.  Defendants' private beach is burdened by a 15
foot wide easement on the south end of the private beach in favor of certain subdivision parcels.
The easement runs from the edge of the bluff on the west side of the beach east to Lake
Michigan.  Plaintiffs, whose properties front Sheridan Road and are not beach front properties,
have access to the beach via the beach easement, but access is limited due to a gate installed by
the Village in the mid-1990s that is locked overnight during warmer months and at all times
otherwise.  Plaintiffs commenced this action seeking a determination that they had a right, under
various legal theories, to cross over defendants' property to access the beach so that they, like
defendants, would have unrestricted access.

¶ 2    On summary judgment, the trial court found that although plaintiffs were entitled to reasonable access to the beach by virtue of an express easement that ran with their respective properties, they had not established either an express easement for ingress and egress over defendants' property or the existence of an easement by prescription. Plaintiffs' claim that an easement by necessity existed went to trial and the trial court, after plaintiffs' case-in-chief, entered judgment in favor of defendants on this claim as well, finding that at the time of the original conveyance, there existed a ready means of ingress and egress to the beach that did not entail crossing over defendants' property. We affirm these rulings.

¶ 3    Defendants also contended in the trial court that one of the plaintiffs did not have any rights to access the beach given the lack of any express easement in the chain of title. They appeal the trial court's summary judgment against them on this issue and, in addition, argue that the trial court abused its discretion in refusing to sanction plaintiffs under Illinois Supreme Court Rule 137 (eff. July 1, 2013). We affirm these rulings as well.

¶ 4                              BACKGROUND

¶ 5    Plaintiffs-appellants are George and Kathryn Katsoyannis and the Nikki R. Alexander Revocable Trust (collectively, plaintiffs). Defendants-appellees are James Findlay and Susan Small. Each of the parties owns a home in the Winnetka Beach Estates subdivision. George and Kathryn purchased their property (Lot 8) in 1998; Nikki Alexander purchased her property (Lot 9) in 2005; and defendants purchased their property (Lot 5) in 2007. Each of the properties is improved with a single-family home. Shortly after defendants purchased Lot 5, they observed a woman crossing their property on her way to the beach and stopped her. The woman was George and Kathryn's daughter and it was at that point that plaintiffs claim to have learned that defendants disputed their ability to access the beach by traversing defendants' property.

¶ 6    In order to place the issues presented on appeal in context, it is necessary to trace the history of the subdivision from its inception. In October 1959, LaSalle National Bank submitted a plat[1] for the "Winnetka Beach Estates" subdivision to the Village of Winnetka. The Village approved the plat on November 3, 1959. The subdivision consists of 10 lots and is located on the shore of Lake Michigan bounded by Lake Michigan on the east, Sheridan Road on the west, Oak Street on the north, and Cherry Street on the south. At the time it submitted the plat, LaSalle owned Lots 4, 5, 8, 9 and 10. The subdivision includes beach front properties with direct access to a private beach, as well as nonbeach front properties, which front on Sheridan Road.

¶ 7    George and Kathryn's single family residence is located on Lot 8 at 495 Sheridan Road. Alexander's single family residence is located on Lot 9 at 467 Sheridan Road. Lots 8 and 9 do not abut Lake Michigan or Cherry Street. Lot 8 abuts Oak Street on the north and Lot 9 abuts a private interior road that intersects with Oak Street. Lot 9 is located between Lot 8 to its north and Lot 10 to its south. Defendants' single-family residence is located on Lot 5 at 455 Sheridan Road. Lot 5 is beach front property with a private beach and it abuts Cherry Street.

¶ 8    At the time the plat was approved, Cherry Street was open and provided unobstructed access to the private beach for subdivision residents and to a small public beach at the end of Cherry Street, which is bounded on either side by private beaches. In the mid-1990s, the Village erected a gate at the intersection of Cherry Street and Sheridan Road and locked the gate, preventing access to the beach between 9:30 p.m. and 6 a.m. from April through November and at all times during the winter months of December through March. Members of the public can access the public beach via Cherry Street (during permitted times) and can also access another

_____

[1] A copy of the plat is included in the Appendix to this Opinion.

small public beach from steps down the bluff from Oak Street. But perpendicular barriers prevent the public from walking across the private beach between the two public beaches lying to the south and north. Thus, when the Cherry Street gate is closed, no one, including subdivision residents who do not own beach front property, can access any portion of the private beach via Cherry Street. Members of the public can still access the public beach lying to the north by using the Oak Street stairs, but subdivision residents using those stairs would have to wade out into Lake Michigan, walk or swim around the barriers and walk across seven other private beach properties to reach the beach easement. When the gate is closed, the only means for plaintiffs to access the beach is over defendants' property.

¶ 9       The parties' dispute centers around the original conveyance of Lot 5 from LaSalle to Joseph and Nancy Davis on July 14, 1960, and the warranty deed (Davis deed) recorded on July 18, 1960. The Davis deed conveyed Lot 5, subject to the following restriction:

> "(d) *** an easement over the South 15 feet of Lot 5 above described commencing at the toe of the bluff of said Lot 5, running eastwardly to the water line of Lake Michigan for reasonable beach privileges in favor of the owner and future owners of Lots 8, 9 and 10 in the Winnetka Beach Estates. *Grantor reserves to itself, its successors and assigns, the easement herein set forth for said Lots 8, 9 and 10 and this conveyance is subject to said easement and the right of the Grantor to grant said easements in the conveyance of said Lots 8, 9 and 10.*" (Emphasis added.)

We refer to the foregoing provision as the beach easement.

¶ 10       By the time LaSalle conveyed Lot 5 to the Davises, LaSalle had already conveyed Lot 8 to Norman and Vivian Jensen on March 18, 1960, and Lot 9 to William Cox, Jr., on March 29, 1960. On October 10, 1960, LaSalle granted the beach easement to the Jensens who recorded

the easement on October 20, 1960. The Jensens later conveyed title to Lot 8 to Benjamin and Elizabeth Douglass.

¶ 11        Cox later conveyed title to Lot 9 to Alvaro Biagi, who transferred title to the Al Biagi Trust. There is no conveyance of the beach easement by LaSalle to Cox similar to that from LaSalle to the Jensens.

¶ 12        On November 16, 1998, the Douglasses conveyed title to Lot 8 to George and Kathryn. The deed conveyed Lot 8 and an easement over Lot 5 "for reasonable beach privileges as created by grant recorded on October 20, 1960."

¶ 13        On September 1, 2005, Alexander[2] acquired title to Lot 9 from the Al Biagi Trust. The deed also conveyed an "easement for reasonable beach privileges *** as reserved in the deed from LaSalle National Bank."

¶ 14        On March 15, 2007, defendants acquired Lot 5 by trustee's deed from the Northern Trust Company as executor of the estate of Jessie V. Stone. After acquiring Lot 5, defendants demolished the existing structure on the lot and in its place constructed a new single family residence. Defendants also erected a wooden fence on the property and a wooden boat rack on the private beach.

¶ 15        On June 16, 2010, after the dispute arose regarding plaintiffs' use of defendants' property to access the beach easement, plaintiffs filed a complaint for declaratory judgment and other relief seeking an easement over defendants' property to provide continual and unimpeded ingress and egress to the beach easement. According to the complaint, defendants' predecessors-in-interest, unlike the defendants, "continuously and without protest recognized" the route across

---

[2] The property was originally acquired by Nikki Alexander and her husband, title was later transferred to the Nikki R. Alexander Revocable Trust on August 15, 2007.

Lot 5 plaintiffs and their predecessors-in-interest used to access the beach. The "route" entailed walking about 200 feet south on defendants' property to access Cherry Street east of the gate. In the alternative, plaintiffs sought to establish an implied easement for ingress and egress over defendants' property by necessity (count II) and prescription (count III). Plaintiffs also sought a permanent injunction to prevent defendants from interfering with their use and enjoyment of the beach easement (count IV). Plaintiffs claimed defendants interfered with their use and enjoyment of the beach easement by: (1) erecting a wooden fence on their lot blocking access to the beach; (2) constructing a wooden boat rack and planting vegetation; (3) permitting large, unleashed dogs to freely roam their property; and (4) verbally accosting individuals traversing their property to access the beach easement.

¶ 16    Because plaintiffs' complaint raised matters relating to the title of defendants' property, defendants through their retained attorney tendered a demand for defense to their title insurer, which agreed to defend against counts II (implied easement by necessity) and III (prescriptive easement), but refused coverage as to counts I (declaratory judgment) and IV (material interference). Defendants' retained attorney then withdrew and the attorney of behalf of the title insurer was substituted as counsel.

¶ 17    Through their new attorney, defendants contested the existence of an ingress and egress easement over their property. Defendants also raised a counterclaim for quiet title seeking to: (1) limit the beach easement to the 15-foot area located on the southern portion of the beach extending from the toe of the bluff to Lake Michigan's water line; (2) limit the beach easement to Lot 8 only and determine that Lot 9 had no beach easement; and (3) find that the owners of Lots 8 and 9 did not have an ingress and egress easement over Lot 5.

¶ 18    The parties eventually filed cross-motions for summary judgment. Following a hearing, the trial court determined that as to plaintiffs' request for declaratory relief, plaintiffs did not have an explicit ingress and egress easement over Lot 5, but that Alexander was entitled to access the beach easement (count I). The court rejected plaintiffs' theory of an easement by prescription (count III) over Lot 5. With respect to plaintiffs' claims that defendants had obstructed the beach easement (count IV), the court determined that the vegetation on the easement did not constitute a material obstruction, but that the boat rack did.

¶ 19    The court's rulings reserved for trial plaintiffs' claim that an easement by necessity for ingress and egress existed over defendants' property to access the beach easement. Defendants acknowledged that the gate at Cherry Street limited access to the beach easement, but argued that Oak Street provided an additional access point. With respect to access via Oak Street, the court determined that there existed issues of fact as to whether perpendicular barriers erected by the beach front property owners prohibited any reasonable access by the owners of Lots 8 and 9 to the beach easement, *i.e.*, whether plaintiffs would have to wade out into Lake Michigan to reach the private beach.

¶ 20    After the summary judgment rulings, defendants retained separate counsel to provide their defense in addition to counsel provided by the title insurer. Shortly thereafter, defendants' additional counsel filed a supplemental motion for summary judgment arguing, in part, that plaintiffs had a claim for regulatory taking or inverse condemnation against the Village for creating the limited access to the beach easement by installing and locking the gate. Defendants contended that this provided plaintiffs with an adequate remedy at law precluding their equitable claim against defendants. Defendants also argued that no implied easement by necessity existed at the time of severance.

¶ 21        In response, plaintiffs argued that there was no regulatory taking by the Village. Plaintiffs also articulated a new theory regarding the existence of an easement by necessity for ingress and egress. Pointing to an ordinance enacted by the Village in 1882 (that was first alluded to by defendants), which vacated, *i.e.*, privatized, a portion of Cherry Street, plaintiffs argued that the remaining portion, controlled as public lands by the Village, offered only a permissive means of ingress and egress to the beach easement. Plaintiffs reasoned that because the access route was not guaranteed, in that the Village, as an "indulgent neighbor," could withdraw permission to use the route, an easement by necessity for ingress and egress over Lot 5 arose. The trial court rejected plaintiffs' new theory and likewise found defendants' regulatory taking argument too speculative. Regarding the implied easement by necessity count, the trial court found a genuine issue of material fact as to whether Cherry Street was a "public highway" providing access to the beach easement or a utility easement not intended for public use. Following this ruling, the trial judge who had presided over the case retired. After defendants' third motion for summary judgment was denied, the matter proceeded to trial.

¶ 22        The evidence plaintiffs presented at trial was largely unhelpful to their case. At the close of plaintiffs' case, on defendants' motion, the trial court found that no implied ingress and egress easement by necessity existed because at the time of severance Cherry Street provided access to the beach easement. The trial court again rejected plaintiffs' novel argument that the Village was a private owner of Cherry Street, *i.e.*, an "indulgent neighbor," finding it was irrelevant whether Cherry Street was public or private because at the time of severance, the public had unfettered access to the street. Based on these determinations, the court granted defendants' motion for a finding at the close of plaintiffs' case.

¶ 23    After trial, defendants elected to proceed *pro se* and their lawyers withdrew. Shortly thereafter, defendants filed a *pro se* motion for Rule 137 sanctions against plaintiffs and their attorneys asserting that the allegations in the complaint were not well-grounded in fact or supported by existing law and that their case was frivolous. Defendants also asserted that plaintiffs commenced the suit merely to harass them. Following a hearing, the trial court denied defendants' motion for sanctions. Both parties timely appealed.

¶ 24                            ANALYSIS

¶ 25                        A. Plaintiffs' Appeal

¶ 26    Plaintiffs' sole issue on appeal is that the trial court erred in finding as a matter of law that they did not establish an implied easement by necessity to traverse defendants' property to access the beach easement.

¶ 27    The parties disagree on the appropriate standard of review, with plaintiffs advocating *de novo* review of the finding at the close of their case-in-chief and defendants urging a manifest weight of the evidence standard. A ruling on a motion for a directed finding at the close of plaintiff's case in a bench trial involves a two-prong analysis. First, the trial court must determine whether, as a matter of law, the plaintiff presented a *prima facie* case. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 275 (2003). We review this question of law *de novo*. *Id*. If plaintiff meets that burden, the trial court then proceeds to the second prong. This requires the court to consider the totality of the evidence presented, including any evidence favorable to the defendant, and weigh the quality of all the evidence, determine the credibility of witnesses, and draw reasonable inferences therefrom while applying the required standard of proof for the underlying action to determine whether sufficient evidence remains to establish plaintiff's *prima facie* case. *Id*. at 275-76. This second determination is reviewed applying a manifest weight of

the evidence standard. *Id*. at 276. Because the trial court found, as a matter of law, that plaintiffs could not establish the element of necessity required to present a *prima facie* case, our review is *de novo*. But even if we were to apply the manifest weight of the evidence standard, the result would be the same.

¶ 28    An easement is an individual's right or privilege, for a limited purpose, to either pass over or use the land of another. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 32. An implied easement is the product of the parties' intention and is "implied" because courts must attempt to ascribe an intention to parties who failed to express their intentions at the time of conveyance. *Granite Properties Ltd. Partnership v. Manns*, 117 Ill. 2d 425, 437 (1987); *Gacki v. Bartels*, 369 Ill. App. 3d 284, 289 (2006). To establish an easement by necessity, the plaintiff must present evidence "that his property and the defendants' property were owned by a common grantor, that the properties were severed, and that at the time of severance his parcel become landlocked." *Gacki*, 369 Ill. App. 3d at 291. An implied easement by necessity generally arises where, without the easement, the property has no ready means of ingress or egress. *Manns*, 117 Ill. 2d at 435-36. In such circumstances, the owner of the landlocked property is deemed to have a right-of-way for ingress and egress across another's land. *Id*. at 436. Proof of necessity alone furnishes the probable inference of the parties' intention because the parties presumably did not intend to render the land inaccessible. *Id*. at 438. The party claiming an easement bears the burden of proof to demonstrate facts necessary to create an implied easement and such proof must be by clear and convincing evidence. *Mid-City National Bank v. C.A. Hemphill & Associates*, 163 Ill. App. 3d 15, 21 (1987).

¶ 29    Here, although the first two elements–common ownership and severance–are present, plaintiffs failed to establish that at the time of severance, it was necessary to traverse Lot 5 to

access the beach easement. The parties agree on the proposition of law that for purposes of determining whether an implied easement exists, severance is the relevant point in time to evaluate necessity and also agree that severance occurred on July 14, 1960, when LaSalle conveyed Lot 5 to the Davises subject to the beach easement. *Rexroat v. Thorell*, 89 Ill. 2d 221, 230 (1982) (quoting *VanPatten v. Loof*, 349 Ill. 483, 487 (1932)); *Mid-City National Bank*, 163 Ill. App. 3d at 24. Directly contrary to plaintiffs' position, the record reveals that at the time of severance, Cherry Street provided an unrestricted route to access the beach easement. The gate that inhibits plaintiffs' access to the easement was not installed until decades after severance. Consequently, no argument can reasonably be made that at the time of severance ingress and egress Lot 5 was the only means available to access the beach easement creating a need to traverse Lot 5. See *id.* at 23 ("Illinois courts have held that wherever available alternatives affording reasonable means of ingress and egress are present, easements by implication should not be sanctioned.").

¶ 30    We also reject plaintiffs' alternative theory based on the 1882 ordinance. Nothing about the fact that the nonvacated portion of Cherry Street was (and remains) a public way gives rise to an easement by necessity over Lot 5. As plaintiffs were constrained to admit in the trial court, at the time of severance, Cherry Street provided a ready means of ingress and egress to the beach easement. That fact is determinative and no authority cited by plaintiffs provides otherwise.

¶ 31    Further, the ordinance on its face reflects that it was the product of an agreement reached between the Village and P.C. Maynard, who then owned property on the south side of Cherry Street. Pointing to the language of the ordinance that "the owners of property adjoining said Cherry Street waive and relinquish any and all right to claim to" the nonvacated portion of the street, plaintiffs argued that they were foreclosed from claiming any right to use Cherry Street to

access the beach easement. But plaintiffs have never articulated how and we find no basis to conclude that an agreement between a municipality and one property owner could affect the rights of any other property owners not parties to the agreement. We believe, as defendants contend, that this theory was a "last-ditch" effort to salvage plaintiffs' easement by necessity claim and, as such, was properly rejected by the trial court.

¶ 32     Moreover, plaintiffs' reliance on *Finn v. Williams*, 376 Ill. 95 (1941), to support their new theory is misplaced. In *Finn*, the parcel of property at the time of severance was landlocked. *Id*. at 99. The landlocked plaintiffs had permissive means of ingress and egress from a neighboring owner, but permission was later withdrawn and that change in circumstances left the plaintiffs again landlocked. *Id*. at 98-99. The court held that a right-of-way by necessity may lay dormant while enjoying permissive use afforded by another, but when such permission ceases, the plaintiffs may avail themselves of the easement that was necessarily implied in the original conveyance severing the two tracts of property and causing one to be landlocked. *Id*.

¶ 33     More recent cases have expanded the principles articulated in *Finn* to find that where no easement by implication arises at the moment of severance, "a change in circumstances since the severance, no matter how great, cannot *create* any such easement." (Emphasis added.) *Emanuel v. Hernandez*, 313 Ill. App. 3d 192, 196 (2000); see *Rexroat*, 89 Ill. 2d at 230 (quoting *VanPatten*, 349 Ill. at 487). In other words, no implied easement can ever arise from changed conditions alone. See *Rexroat*, 89 Ill. 2d at 230.

¶ 34     *Finn* is distinguishable because, unlike the parcel in *Finn*, plaintiffs' access to the beach easement was not landlocked at the time of severance; thus, there was no need at the time of severance to cross over Lot 5 to access the beach easement. Moreover, nothing in the record establishes that the owners of Lots 8 and 9 were unable–by physical barriers or lack of

permission–to access the beach easement via Cherry Street at the time of severance. Thus, whether the Village was a private, "indulgent neighbor" merely permitting use of Cherry Street is irrelevant for purposes of determining whether an implied easement by necessity exists here. Likewise, the Village's conduct in installing the gate decades later and locking it at specified times is equally irrelevant to the issue of whether an implied easement by necessity existed at severance, especially given that a change in circumstances cannot create an easement by necessity where none previously existed.

¶ 35    It is clear that the beach easement was neither "landlocked" nor inaccessible at the time of severance–a requirement that must exist to support the necessity element of an implied easement by necessity. Likewise, nothing in the record supports an inference–implied or otherwise–that LaSalle, as a party to the original conveyances, intended to grant Lots 8 and 9 an easement to traverse Lot 5 to access the beach easement. See *Egidi v. Town of Libertyville*, 251 Ill. App. 3d 224, 232 (1993); *McDermott v. Metropolitan Sanitary District*, 240 Ill. App. 3d 1, 20 (1992) (although there are no specific words that must be used to grant an easement, the words used must show a clear intent to convey an easement). Significantly, the words "ingress" and "egress" are mentioned nowhere in the Davis deed. Accordingly, the trial court did not err in entering judgment in defendants' favor at the close of plaintiffs' case as they failed to establish a *prima facie* case for an implied easement by necessity.

¶ 36                              B. Cross-Appeal

¶ 37    Defendants cross-appeal asserting that the trial court erred in (1) finding that a beach easement existed in favor of Lot 9 (Alexander's) and (2) refusing to impose sanctions on the grounds that plaintiffs' lawsuit was frivolous and not well-grounded in fact and law. We address each contention in turn.

¶ 38                              1.  Beach Easement in Favor of Alexander

¶ 39          Defendants contend that the trial court erred in denying their motion for summary judgment and entering summary judgment in favor of Alexander finding that, as owner of Lot 9, Alexander had a right to use the beach easement.  Defendants maintain that there was no express grant of the beach easement in any deed conveying ownership to Lot 9, which precludes Alexander's right to use the private beach.

¶ 40          Summary judgment is proper where the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2014); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).  In determining whether a genuine issue as to any material fact exists, the record must be viewed in the light most favorable to the nonmovant and strictly against the movant.  *Williams*, 228 Ill. 2d at 417.  Summary judgment in the defendant's favor is proper if the plaintiff fails to establish any element of the cause of action.  *Id*.  We review *de novo* the trial court's ruling on a motion for summary judgment.  *Id.*

¶ 41          Neither party disputes that LaSalle created the beach easement in the Davis deed for the benefit of Lots 8, 9 and 10.  Likewise, neither party disputes that the beach easement was conveyed to the owners of Lots 8 and 10 and that they are entitled to enjoy the beach easement. The issue is whether Lot 9 was granted the beach easement similar to the lots immediately to its north and south or instead whether, unlike the every other lot in the subdivision, Lot 9 has no beach rights at all.  Before considering the specific language of the Davis deed, we reiterate that where an easement is created by a deed, the deed must be construed according to the parties' intent, which is determined based on the words of the deed and the circumstances contemporaneous with the deed's creation.  *Seymour v. Harris Trust & Savings Bank of Chicago*,

264 Ill. App. 3d 583, 594 (1994) (quoting *Schnuck Markets, Inc. v. Soffer*, 213 Ill. App. 3d 957, 974 (1991)).

¶ 42        Here, Lot 9 was 1 of 10 lots that were included in a subdivision named "Winnetka Beach Estates."  A review of the plat reveals that seven lots have designated private beach areas, but Lots 8, 9 and 10 do not.  Because Lots 8, 9 and 10 do not have a private beach annexed to their property, the need for the beach easement is readily apparent.  The plat makes equally clear that LaSalle would not likely have intended to exclude only one lot–Lot 9–from having access to the beach, while affording such access to other nonbeach front lots.  Moreover, the evidence in the record reveals that other former and current residents of the subdivision understood that all residents of the subdivision were permitted to use the private beach.  Consequently, LaSalle without question intended to convey to Lot 9 beach easement rights.

¶ 43        Nonetheless, defendants claim that LaSalle never actually conveyed the beach easement referred to in the Davis deed to Lot 9.  According to defendants, although the Davis deed manifests LaSalle's intent to reserve the ability to grant the beach easement to Lot 9, no express grant appears in the chain of title.  Pointing to the express grants in the chain of title for Lots 8 and 10, defendants ask us to find that the lack of an express grant means that Lot 9 has no right to access the beach easement.

¶ 44        But a comparison of the three deeds is unnecessary because we need only consider the original deed reserving the beach easement–the Davis deed.  More specifically, the Davis deed conveyed Lot 5 subject to the beach easement benefiting "the owner and future owners of Lots 8, 9 and 10 in the Winnetka Beach Estates" and reserved "to [LaSalle], its successors and assigns, the easement herein set forth for said Lots 8, 9 and 10 and this conveyance is subject to said easement and the right of the Grantor to grant said easements in the conveyance of said Lots 8, 9

and 10." Thus, LaSalle's intention of conveying a beach easement to benefit Lots 8, 9 and 10 is clearly ascertained from the Davis deed's unambiguous language.

¶ 45        Importantly, defendants do not dispute that a beach easement was, in fact, created, but only that Lot 9 was never expressly granted the beach easement. Defendants' argument that the Davis deed only reserved the right to grant the easement, but did not operate to effectuate the grant to Lot 9 is unconvincing because an easement "is created when a grantor *reserves or creates* a right in the nature of an easement or servitude in the property granted for the benefit of other land owned by the grantor and originally forming, with the land conveyed, one parcel." (Emphasis added.) *Aebischer v. Zobrist*, 56 Ill. App. 3d 151, 154 (1977). LaSalle's creation of the beach easement and express reservation to grant that easement to itself and the future owners of Lots 8, 9 and 10 reflects LaSalle's intention to create a beach easement in favor of those lots.

¶ 46        Considering the express language used in the Davis deed in conjunction with the circumstances contemporaneous with the conveyance, including the obvious objective LaSalle sought to achieve by creating the beach easement, we must find that the beach easement benefits Lot 9. *Cross v. O'Heir*, 2013 IL App (3d) 120760, ¶ 25. Accordingly, no genuine issue of material fact exists regarding Alexander's right to use the beach easement and summary judgment in Alexander's favor was appropriate.

¶ 47                              2. Rule 137 Sanctions

¶ 48        Defendants assert that the trial court erred in denying their motion for sanctions because the trial court applied a subjective standard to determine whether the lawsuit was filed for an improper purpose instead of the required objective standard to determine whether plaintiffs pled false facts and failed to perform a reasonable inquiry into their asserted claims. Defendants limit

their claim for Rule 137 sanctions to plaintiffs' counts I, II and III and assert none of those counts were well-ground in fact or law.

¶ 49          Rule 137 requires "that any pleading, motion, or other document filed in court be 'well grounded in fact and *** warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law,' and not brought for any improper purpose." *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 7 (quoting Ill. S. Ct. R. 137(a) (eff. July 1, 2013)). When Rule 137 is violated, the court may, on a party's motion or its own initiative, impose sanctions upon the individual who signed the filing, the represented party, or both. *Id*. (citing Ill. S. Ct. R. 137(a) (eff. July 1, 2013)). The party seeking to impose Rule 137 sanctions bears the burden of demonstrating that the opposing party filed a frivolous pleading or made untrue and false allegations without cause. *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 467 (1990); *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050-51 (1999). Courts consider an allegedly offending complaint at the time it was filed instead of engaging in hindsight. *Villaverde v. IP Acquisition VIII, LLC*, 2015 IL App (1st) 143187, ¶ 69. Sanctions can include reasonable expenses incurred because of the objectionable pleading, including reasonable attorney fees. Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

¶ 50          We review the trial court's ruling denying a motion for sanctions for an abuse of discretion. *Arnold*, 2015 IL 118110, ¶ 16. A court abuses its discretion only where no reasonable person would agree with its ruling. *Id*. Although defendants assert that their claim for sanctions must be reviewed *de novo* because it is unclear whether the trial court considered the merits of defendants' claims regarding plaintiffs' failure to conduct a reasonable inquiry into their claims (the objective component), we find no basis to depart from the well-articulated and established precedent applying an abuse of discretion standard.

¶ 51 We agree with the trial court's finding that the record does not support defendants' position that plaintiffs' subjective motivation in bringing the lawsuit was to harass defendants and to strong arm them into relinquishing a portion of their property for plaintiffs' use. There was a genuine dispute as to whether plaintiffs had a right to traverse defendants' property on the basis that no other viable option to access the beach easement existed–whether at all during colder months or overnight during warmer months. Further, defendants contested throughout the trial court proceedings and continue to maintain on appeal that the Alexanders have no right to use the beach easement at all. Accordingly, it is apparent the underlying disputes were not commenced for harassment purposes only.

¶ 52 Defendants base their purported objective reasons for sanctions mainly on the following three grounds: (1) plaintiffs erroneously pled that LaSalle owned Lot 5 when the beach easement to Lot 8 was recorded on October 10, 1960 even though LaSalle had already conveyed its interest in Lot 5 via the Davis deed (count I); (2) plaintiffs and their attorney failed to dismiss the implied easement count and lawsuit after discovering the gate restricting access to Cherry Street did not exist at the time of severance (count II); and (3) plaintiffs failed to offer any evidence to support 20 years of continuous use and that the use of Lot 5 was adverse (count III).

¶ 53 With respect to counts I (declaratory judgment) and III (prescriptive easement), defendants are seeking as sanctions the unreimbursed legal fees and costs they incurred prior to the title insurer's representation totaling $2,358.88 and $760.88, respectively. Defendants' requested sanction amount as to count II (implied easement) of $187,544.99 includes a portion of the unreimbursed balance plus the additional fees and costs incurred to litigate that claim to trial.

¶ 54 We have thoroughly reviewed the merits of defendants' objective grounds for sanctions as to all three claims, along with the detailed invoice supporting their requested sanction

amounts. Rule 137 is penal in nature and must be strictly construed. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). A party's conduct is objectively evaluated as one of reasonableness at the time of filing and requires the party to make a reasonable inquiry into the facts to support the filing. *Chicago Tile & Trust Co. v. Anderson*, 177 Ill. App. 3d 615, 622 (1988). Defendants bore the burden of establishing that plaintiffs' complaint upon filing was not based on a reasonable prefiling inquiry, but defendants have failed to meet that burden. Plaintiffs filed their complaint raising alternative theories to support their claimed right to walk across the edge of their neighbor's property to access a portion of the private beach. Given the fact that none of the parties were original owners of the property and that, prior to defendants' purchase of their property in 2007, there was evidence that some residents accessed the beach easement by crossing defendants' property without objection, we cannot say that plaintiffs' complaint and their pursuit of the various theories of liability is the type of baseless litigation that Rule 137 was designed to address.

¶ 55    Likewise, no sanctions are warranted on the basis that plaintiffs continued to litigate their implied easement by necessity claim after it was established that no gate existed at the time of severance. The trial court found that material questions of fact regarding plaintiffs' implied easement by necessity count remained that required trial to determine whether Oak Street provided viable means of ingress and egress–presumptively based in part on the understanding that the gate at Cherry Street prevented access to the beach easement. At the close of plaintiffs' case, it was clear that the gate did not exist at the time of severance and there were no restrictions prohibiting residents from using Cherry Street to access the private beach, all of which supported a finding in defendants' favor. But defendants claim that plaintiffs and their attorney should have not only abandoned this count upon learning that the gate was not installed at the time of

- 19 -

severance, but also that they failed to engage in any prefiling investigation as to when the gate was, in fact, installed.

¶ 56    Although defendants correctly claim that plaintiffs failed to specifically articulate their investigative measures regarding the installation of the gate, the fact remains that plaintiffs' claim of an implied easement by necessity was not a theory so unsound or lacking in any reasonableness–regardless when the gate was installed.  Moreover, Rule 137 does not prohibit parties from advancing novel theories or punish them for making losing arguments.  *Arnold*, 2015 IL 118110, ¶ 15; *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 153-54 (1993).  Accordingly, defendants failed to establish that the trial court abused its discretion in denying sanctions on this basis as well.

¶ 57                                            CONCLUSION

¶ 58    All the parties in this case are privileged to live on or in close proximity to one of the Chicago area's most beautiful, natural features.  While defendants, as relative newcomers to the Winnetka Beach Estates and in the interest of good relations with their new neighbors, might have decided to allow the owners of Lots 8 and 9 to walk down their driveway to access Cherry Street (which defendants could have done without compromising their absolute right to deny such access), nothing in the law requires them to do so.

¶ 59    For the reasons stated, we affirm the trial court's order finding that: (1) no implied easement by necessity for ingress to and egress from Lot 5 exists; (2) the owners of Lot 9 have the right to use the beach easement; and (3) no Rule 137 sanctions were warranted.

¶ 60    Affirmed.

No. 1-15-0036

APPENDIX

