2021 IL App (1st) 181558-U

Nos. 1-18-1558, 1-19-0847, 1-19-1662 & 1-20-0324 cons.

Order filed December 14, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* THE MARRIAGE OF:<br>MICHELE A. BROWNE, | ) ) ) | Appeal from the<br>Circuit Court of<br>Cook County. |
| Petitioner-Appellant/Cross-Appellee, | ) ) | |
| v. | ) ) | No. 2014 D 5668 |
| ROBERT P. BROWNE, | ) ) | The Honorable<br>Debra B. Walker, |
| Respondent-Appellee/Cross-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

## **ORDER**

¶ 1    *Held*: The reviewing court lacked jurisdiction over two of the four consolidated appeals filed in this case. Where the respondent conducted himself based on a reasonable, good faith legal argument, the trial court properly declined to impose sanctions against him under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) but erred when it nonetheless ordered him to pay statutory attorney fees. In addition, the trial court's maintenance award failed to account for the petitioner's expenses for health insurance and cancer treatment but was otherwise appropriate. The court appropriately classified the parties' Georgia home as marital property.

¶ 2      This consolidated appeal arises from several orders entered in the proceedings which dissolved the marriage of Michele A. Browne and Robert P. Browne. On appeal, Michele challenges the trial court's denial of attorney fees under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), the court's maintenance award and the court's classification of property. Robert challenges our jurisdiction over two of the four consolidated appeals and the trial court's award of attorney fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act). 750 ILCS 5/508(b) (West 2018).

¶ 3      We dismiss appeal numbers 1-18-1558 and 1-19-0847. In appeal number 1-19-1662, we affirm in part, reverse in part and remand for further proceedings. We vacate the statutory attorney fees order challenged in appeal number 1-20-0324 and otherwise affirm the court's judgment.

¶ 4                                  I. Background

¶ 5      Michele and Robert were married in 1989 and had three sons, who are all now adults. The couple separated in March 2013, and in June 2014, Michele filed a petition for dissolution of marriage. Robert filed a counter-petition in January 2015.[1] Following trial, on June 21, 2018, the trial court entered an order dissolving the parties' marriage, but litigation continued through 2020. Given the extensive nature of the trial evidence and subsequent proceedings, we recite only those facts necessary to resolve the issues raised on appeal.

¶ 6      The evidence at trial generally showed that over the course of the parties' marriage, Robert's employment led them to live in many different locations, including New York City, Tokyo, London and Atlanta. Robert had a bachelor's degree and a master's degree in

---

[1]Robert had filed a petition for dissolution in Lake County in June 2014, but voluntarily dismissed it after the trial court denied his motion to transfer venue in the Cook County case filed by Michele.

international business as well as the chartered financial analyst designation. As of trial, he was the Chief Investment Officer of Northern Trust and was well compensated. His employment allowed the family to enjoy a high standard of living.

¶ 7  Michele, who similarly had a bachelor's degree in finance and a master's degree in international business, worked during the first years of their marriage, but had stopped working by the time their twin sons were born in 1997. She became a fulltime homemaker while Robert worked long hours and traveled extensively.

¶ 8    In January 2017, Michele was diagnosed with stage-one, lobular breast cancer. Following an initial surgery at Northwestern Lake Forest Hospital, Michele pursued radiation treatment therapy at the University of Chicago. In addition, Michele was treated at the Center for New Medicine in Irvine, California. Said treatment involved mistletoe therapy, bloodwork, supplements to boost her immune system and dendritic-cell therapy. After her first dendritic cell treatment, the amount of tumor cells circulating in her body was reduced from 2.4 to 2 per 7.5 milliliters of blood, but she still had cancer and would require further treatment. Michele's continuing course of treatment in California costs approximately $5,000 per month and is largely an out-of-pocket expense. As of trial, Michele's medical expenses included $175,000 covered by Robert's insurance during their marriage.

¶ 9    At trial, the parties disputed whether the residence located at 1351 Swift Creek in Greensboro, Georgia (the Georgia Home) was marital property or Michele's non-marital property. The property, purchased for about $2 million, was titled in Michele's name. Michele acknowledged that she did not consider any of the assets held individually in Robert's name to be his non-marital property but nonetheless maintained that Robert gifted her the Georgia Home as an apology for failing to sell off their Elan Pharmaceutical stock before prices dropped.

According to Richard Greeman, Jr., Michele's brother, he heard Michele tell Robert that she wanted to cancel the contract to purchase the Georgia Home. Greeman also testified that he heard Robert say, "I want to make it up to you."

¶ 10     In contrast, Robert disputed that he had intended to make a gift and instead testified that the Georgia Home was titled in Michele's name for estate tax purposes. Robert testified that he spent ten-day periods at the Georgia Home twice in 2009 and once in 2010. He also spent a week there in 2012 and went there for shorter periods on other weekends and holidays. Although Robert initially had a key to the house, Robert's access to the Georgia Home ended sometime after the couple separated.

¶ 11     Cathleen Belmonte Newman, a financial analyst, testified on Michele's behalf regarding the family's expenses and lifestyle. Newman testified that over recent years, Michele's average monthly expenses were $39,000. Those monthly expenses included, $9,334 in family expenses for the home in Lake Bluff, $4,733 in household expenses for Michele's own rental, $1,865 for the mortgage payment on the Georgia Home, another $5,324 in household expenses for that home, $1,768 in transportation costs, $5,205 in personal expenses and $10,915 miscellaneous expenses. The report also noted that Robert provided Michele's health insurance.

¶ 12     On June 21, 2018, the trial court entered an order dissolving the parties' marriage (dissolution order). The court found that Newman's estimate of Michele's monthly expenses was inflated because her postseparation expenses increased significantly and were not indicative of the marital lifestyle.  For example, while her pre-separation clothing expenses were about $16,000 in 2012, those expenses more than doubled to about $35,000 in 2013. The court also noted that the mortgage on the Georgia Home no longer existed and that the children no longer had travel expenses. The court also stated, "Ms. Newman's report provides for $9,334 in

household expenses relative to the rental home in Lake Bluff. The parties no longer rent this home, so these expenses no longer exist.

¶ 13 With respect to Michele's medical treatment, the court stated as follows:

"Michele testified that she has recently spent about $5,300 per month for out of pocket medical expenses. However, the vague testimony provided by Michele regarding this treatment in California does not speak to the necessity of the treatment, nor does the treatment appear to have been ordered by or coordinated with her physicians at the University of Chicago. Thus, this treatment will not be included."

The court also ordered that Michele would pay for her own health insurance going forward.

¶ 14     The trial court found that to maintain her marital lifestyle, Michele's expenses equaled approximately $24,000 per month or net $288,000 per year, "grossed up to approximately $400,000 for state and federal taxes (at close to 40%)." It appears that the trial court arrived at $24,000 by deducting the California treatment and Lake Bluff expenses from the $39,000 suggested by Newman. Yet, the court did not make deductions for other unnecessary expenses identified by the court.

¶ 15     The trial court attempted to realize that amount of income through a combination of investible assets and maintenance.  Specifically, Michele would be receiving approximately $4 million in investable assets and anticipated that she would receive an additional $1.6 million after tax from deferred equity awards. "Assuming Michele invests these assets at a conservative five percent, her return on investment will be approximately $280,000 annually." This, in conjunction with a supplemental maintenance award of $10,000 per month, would ensure that Michele would be able to cover her annual spending.

¶ 16    Finding it to be a close question, the trial court determined that Michele had not met her burden of rebutting the presumption that the Georgia Home was marital property. The court found both parties appeared to be credible, but Robert presented as mild-mannered and reserved, while Michele had an outspoken, controlling demeanor. Testimony that Robert wanted Michele to have the home was "provided by overly biased witnesses" and did not prove by clear and convincing evidence that he intended her to have it as a gift. Additionally, it was unlikely that Robert would gift Michele nonmarital property worth approximately 30% of the marital estate. Furthermore, Michele referred to the property as "our home," sought Robert's input in procuring it and the mortgage was in both spouses' names. Robert also made all payments on the home. While the Georgia Home was titled solely in Michele's name, this was not determinative, and the court found to be credible Robert's testimony that the home was placed in Michele's name for estate planning purposes. Ultimately, the court awarded Michele the Georgia Home in her share of marital property.

¶ 17    The trial court's June 2018 dissolution order did not, however, rule on Michele's request for contribution to attorney fees. Shortly thereafter, on July 17, 2018, the court ordered that any motion to reconsider the June 2018 dissolution order could "be filed only after the court's ruling on contribution." The court also granted Michele leave to file an amended petition for contribution. Despite the pending matters, Michele filed a notice of appeal from the June 2018 dissolution order on July 23, 2018. (No. 1-18-1558) (appeal no. 1). Michele filed a supplemental petition for contribution to attorney and expert fees and costs in the trial court on August 21, 2018.

¶ 18    On October 30, 2018, , Michele filed a petition for adjudication of indirect civil contempt against Robert. She alleged that he willfully failed to transfer to her millions of dollars in

property awarded in the dissolution order. We note that Michele's request for contribution had not yet been ruled on and the parties had not had the opportunity to file a motion to reconsider the dissolution order. Robert then moved to strike or dismiss Michele's petition for adjudication of indirect civil contempt, arguing that he could not be found in indirect civil contempt for allegedly failing to comply with a non-final, non-appealable, unenforceable judgment. Michele disagreed and moved for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018).

¶ 19    At a hearing on March 22, 2019, the trial court rejected Robert's assertion that the court could not hold him in contempt because the dissolution order was not yet enforceable. The court then denied Robert's motion to strike and entered an order for rule to show cause why he should not be held in contempt. The court also ordered that Robert was to pay Michele $81,000 for contribution to her attorney fees. On April 10, 2019, the court's findings were memorialized in a written order.  On April 22, 2019, while her contempt petition and sanctions motion were still pending, Michele filed a notice of appeal from the orders entered on June 21, 2018, and April 10, 2019. Her notice of appeal did not identify the Illinois Supreme Court Rule authorizing her appeal. (Appeal No. 1-19-0847, appeal no. 2).

¶ 20    Robert then responded to the contempt petition and filed a motion to reconsider the April 10, 2019, order, both of which reiterated his position that the dissolution order entered on June 21, 2018, was not enforceable, final or appealable. On May 21, 2019, Michele then filed a supplement to her Rule 137 sanctions motion, which added a request for contribution under section 508(b) of the Act (750 ILCS 5/508(b) (West 2018)) seeking the recovery of attorney fees and costs incurred to enforce the transfer of property awarded in the dissolution order.

¶ 21    Following a hearing on July 24, 2019, the trial court entered a written order discharging the rule to show cause, denying Michele's "Motion for 137 Sanctions and Supplement to Motion

for 137 Sanctions" and denying Robert's motion to reconsider the April 10, 2019, order. The court found that Robert's actions were neither contumacious nor willful and repeatedly stated that the question of whether the dissolution order was enforceable while Michele's fee petition and sanctions motions were pending presented was a close one. The court declined to sanction Robert for taking the position he did.

> "THE COURT: But again, I don't think it is sanctionable conduct, I am denying the motion for sanctions.
>
> MR. LEVY: And the supplement?
>
> THE COURT: Yes, of course, because it was -
>
> MR. LEVY: I just wanted to make sure.
>
> THE COURT: - directly related. It was directly related to the motion for sanctions."

The court also stated, however, that Michele could nonetheless seek attorney fees, apparently not realizing that Michele's supplemental motion filed in May 2019 had already sought section 508 attorney fees. In addition, the parties did not bring this fact to the court's attention. Thus, it appears that the court's denial of Michele's supplemental motion for sanctions did not constitute a ruling on her request for fees and Michele abandoned that request, at least for the time being.

¶ 22    On August 16, 2019, while no pleadings remained pending, Michele filed a notice of appeal from that July order, as well as the two orders previously appealed from. (No. 1-19-1662) (appeal no. 3). Yet, five days later, she filed a petition for post judgment attorney fees and costs incurred from September 2018 to date under section 508. The trial court subsequently denied Robert's motion to strike and dismiss that petition. After further briefing, a hearing on Michele's fee petition ensued on February 4, 2020.

¶ 23    At that hearing, Michele sought $124,462.10 in attorney fees. Robert argued that section

508(b) did not authorize an award of fees because the court found Robert's conduct was neither

willful nor contumacious. He also challenged the trial court's jurisdiction in light of Michele's

third notice of appeal.  The court stated:

> "[U]nder 508(b) I do believe, and I may be, as Mr. Levy has suggested, compiling
>
> my error in some way, but I do believe that the amount of work that was undertaken here
>
> to enforce my judgment, which I have always believed was enforceable, perhaps not final
>
> and appealable, but enforceable, the amount of work that was undertaken, although I
>
> don't think it was the entirety of this work, and that's why I am going to give a lesser
>
> amount, I am going to award $75,000 in fees from Mr. To Mrs. under 508(b)."

Robert then filed a notice of appeal from that order and Michele filed a notice of cross-appeal

from that order as well as the three previous orders that she had attempted to appeal. (No. 1-20-

0324) (appeal no. 4). We consolidated the aforementioned appeals.

¶ 24                                II. Analysis

¶ 25                                A. Jurisdiction

¶ 26    As a threshold matter, we address Robert's motions to dismiss the first two appeals filed

by Michele, which were taken with the case.

¶ 27    Under the Illinois Constitution, the appellate court has jurisdiction to consider appeals

from final circuit court judgments. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 26. Absent a

supreme court rule stating otherwise, the appellate court lacks jurisdiction to review nonfinal

orders or judgments. *Id.* Additionally, a judgment is generally final where it establishes

absolutely and finally the parties' rights and determines the litigation on the merits so that, if

affirmed, the judgment need only be executed. *In re Marriage of Link*, 362 Ill.App.3d 191, 192

(2005). Conversely, an order that leaves matters of substantial controversy unresolved is generally not final. *Id*. at 192-93.

¶ 28    A petition for dissolution of marriage involves a single claim: other issues, including property distribution and support, are ancillary to that claim. *In re Marriage of Crecos*, 2021 IL 126192, ¶ 18; *In re Marriage of Leopando*, 96 Ill. 2d 114, 119 (1984). This principle is reflected in section 503(j) of the Act, which governs petitions for contribution to attorney fees from an opposing party: "After proofs have closed in the final hearing on all other issues between the parties *** and *before judgment is entered*, a party's petition for contribution to fees and costs incurred in the proceedings shall be heard and decided." (Emphasis added.) 750 ILCS 5/503(j) (West 2018); see also 750 ILCS 5/508(a) (West 2018) (stating that "[a]t the conclusion of any *pre-judgment dissolution proceeding* under this subsection, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 and in any other proceeding under this subsection" (Emphasis added)). Thus, section 503(j) requires that a petition for contribution be decided before the final judgment is entered. *In re Marriage of Cozzi-DiGiovanni & DiGiovanni*, 2014 IL App (1st) 130109, ¶ 40.

¶ 29    We note that the term "dissolution judgment" invites confusion due to its multiple meanings. In the first instance, that term may refer to the judgment that resolves the last of outstanding ancillary issues comprising a single dissolution of judgment claim. Alternatively, however, it may refer to an order that specifically dissolves the marriage but leaves other ancillary matters pending. In that instance, the dissolution of marriage *claim* has not been resolved, notwithstanding that the marriage has been dissolved. See also *In re Marriage of Cohn*, 93 Ill. 2d 190, 199 (1982) (stating that bifurcation involves many potential complications and that the trial court's lack unfettered discretion to bifurcate a dissolution judgment). We have

attempted to use the term "dissolution order" when referring to the June 2018 order entered in this case.

¶ 30    Here, on July 23, 2018, Michele filed her first notice of appeal from the dissolution order entered on June 21, 2018. Yet, that order did not constitute a final judgment on the dissolution claim for two reasons. First, that judgment expressly left pending Michele's petition for contribution to attorney fees under sections 503(j) of the Act.[2] 750 ILCS 5/503(j) (West 2018). *In re Marriage of Strauss*, 183 Ill. App. 3d 424, 430 (1989) (finding that no final judgment was entered in the dissolution proceeding where a petition for allocation of attorney fees was still pending when the notice of appeal was filed); *In re Marriage of Derning*, 117 Ill. App. 3d 620, 621-22, 625-28 (1983) (where the trial court entered the judgment dissolving the parties' marriage but reserved the apportionment of responsibility for attorney fees, the reviewing court found that the dissolution judgment was not final and that "attorney fees are directly related to the central dispute in a dissolution-of-marriage case and thus are not incidental"). Stated differently, a dissolution of marriage claim has not culminated in a final judgment where the issue of attorney fees between the spouses remains pending.

¶ 31    Second, the June 2018 order was not a final judgment on the dissolution claim; the parties were still entitled to file a motion to reconsider. Section 2-1203 of the Illinois Code of Civil

---

[2]Prior to 1997, the contribution of one spouse to the other spouse's attorney fees on one hand, and a spouse's liability to his own attorney on the other, were determined in a single hearing. *In re Marriage of King*, 208 Ill. 2d 332, 341 (2003). The 1997 amendment to the Act separated the two types of attorney fee issues, however. *Id*. Section 503(j) governs the former issue while 508(c) governs the latter. *Id*. at 340-41. Section 508(c) now treats an attorney's petition for fees from his own client differently. See 750 ILCS 5/508(c) (West 2018) (stating that such petition "constitutes a distinct cause of action," that a pending petition "shall not affect appealability or enforceability of any judgment or other adjudication in the original proceeding" and that a hearing on such petition is not permitted unless contribution under section 503(j) has already been resolved); see also *In re Marriage of King*, 208 Ill. 2d at 345 (finding difficulties in viewing a section 508(c) award of attorney fees as final and enforceable prior to a final judgment dissolving the marriage).

Procedure (the Code) allows a party to file a motion for retrial, rehearing or modification within 30 days of the judgment's entry. 735 ILCS 5/2-1203 (West 2018); *In re Marriage of Simard*, 215 Ill.App.3d 647, 650 (1991). "Such a timely filed motion stays enforcement of the judgment." *Id.* Additionally, the trial court retains jurisdiction and may rectify any errors until the last timely postjudgment motion has been ruled on. *Id.* Here, on July 17, 2018, the trial court ordered that the parties were not to file a motion for reconsideration until after the court had ruled on the question of contribution. Thus, the June 2018 order was not final, and the trial court, at least at that time, did not view it as such. We dismiss appeal number (No. 1-18-1558), as Michele's premature notice of appeal from a non-final judgment did not confer jurisdiction upon this court.[3] We now turn to Michele's second notice of appeal.

¶ 32 Parties cannot file a notice of appeal from an order disposing of less than all claims absent a finding under Illinois Supreme Court Rule 304(a). *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 341 (2001).

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *is not enforceable or appealable* and is subject to

---

[3]In reaching this determination, we note that Michele has not challenged the trial court's decision to reserve matters for later determination. *In re Marriage of Brogan*, 116 Ill. 2d 72, 74-76 (1986) (finding that where "[t]he trial court decided in favor of bifurcation," entered a dissolution judgment, and reserved determination of property division, maintenance and attorney fees, that *Leopando* did not preclude the petitioner from appealing the trial court's decision to bifurcate); *Claxton v. Reeves*, 2019 IL App (5th) 170200, ¶ 25 (stating that an appeal from a bifurcated judgment dissolving a marriage will not allow the reviewing court to consider issues other than the bifurcation itself).

revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (Emphasis added.) Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Additionally, motions for sanctions under Illinois Supreme Court Rule 137 constitute claims "in the cause of action with which they are connected." *John G. Phillips & Associates*, 197 Ill. 2d at 339. "[F]iling a Rule 137 motion is the functional equivalent of adding an additional count to a complaint, or counter-claim, depending on which party files the motion." *Id.* Thus, absent a Rule 304(a) finding, a party generally cannot appeal an order before the trial court has ruled on a party's pending Rule 137 motion. *John G. Phillips & Associates*, 197 Ill. 2d at 339, 341; see also *In re Marriage of Crecos*, 2021 IL 126192, ¶¶ 43, 44 (stating that a final order disposing of one of several postdissolution claims may not be appealed without an express finding that there is no just cause for delay).

¶ 33      Similarly, a contempt petition constitutes a claim in the underlying dissolution proceedings. *In re Marriage of Gutman*, 232 Ill. 2d 145, 151, 156 (2008). Consequently, a notice of appeal from a maintenance order does not confer jurisdiction upon the appellate court where a contempt petition is still pending absent a Rule 304(a) finding. *Id.*

¶ 34      On April 22, 2019, Michele filed her second notice of appeal from the dissolution order entered on June 21, 2018, and the order entered on April 10, 2019, which required Robert to contribute $81,000 to Michele's attorney fees and costs incurred through August 2018. Michele's other previously filed claims remained pending, however. Specifically, the court had not ruled on Michele's motion for sanctions under Rule 137 or her contempt petition. Additionally, the trial court made no Rule 304(a) finding. As with her first notice of appeal, Michele's second notice of appeal did not confer jurisdiction upon this court, and we dismiss that appeal accordingly (No. 1-19-0847).

¶ 35    In reaching this determination, we note that Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017), cannot save Michele's second notice of appeal:

"*When a timely postjudgment motion has been filed by any party*, whether in a jury case or a nonjury case, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, or *before the final disposition of any separate claim, becomes effective when the order disposing of said* motion or claim is entered." (Emphases added.) Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017).

Although the rule recognizes the effectiveness of a premature notice of appeal once a "claim" is resolved, the rule expressly applies only "[w]hen a timely *postjudgment* motion has been filed ." (Emphasis added.) See also *Hollywood Boulevard Cinema, LLC, v. FCP Funding, II, LLC*, 2014 IL App (2d) 131165, ¶ 22 (acknowledging the committee comments stating that Rule 303(a)(2) protect appellants "when a postjudgment motion is denied"); *Sunnybrook, LP, v. City of Alton*, 2021 IL App (5th) 190314-U, ¶ 58 (stating that "[i]f a party prematurely files a notice of appeal before the entry of the order disposing of the last pending postjudgment motion, Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017) provides that the notice of appeal becomes effective when the order disposing of the last pending postjudgment motion is entered").

¶ 36    Indeed, the savings provision found in Rule 303(a)(2) was intended to prevent the problem that occurred in *John G. Phillips & Associates*. See Ill. S. Ct. R. 303, Committee Comments (adopted Mar. 16, 2007). There, the plaintiff filed a notice of appeal, and the defendant subsequently filed a postjudgment motion for Rule 137 sanctions. *John G. Phillips & Associates*, 197 Ill. 2d at 339. The notice of appeal did not confer jurisdiction on the appellate court absent a Rule 304(a) finding. *Id*.

¶ 37    Here, however, the Rule 137 motion and contempt petition did not involve *postjudgment* claims filed after the final judgment on the underlying claim; rather, Michele's claims were filed *before* a final judgment was entered on the dissolution claim. Because this case does not involve a claim being raised in a *post*judgment motion after the filing of a notice of appeal, Rule 303(a)(2) does not apply.

¶ 38    We recognize that our esteemed colleagues in the Second District would disagree and find that Rule 303(a)(2) does not require the filing of a postjudgment motion. See *In re Marriage of Kane*, 2016 IL App (2d) 150774, ¶¶ 16-17 (finding, where a contempt petition was pending when the notice of appeal was filed and no Rule 304(a) finding was made, that the notice of appeal nonetheless took effect under Rule 303(a)(2) when the contempt petition was resolved, notwithstanding that no postjudgment motion was filed); *McMackin v. Weberpal Roofing, Inc.*, 2011 IL App (2d) 100461, ¶¶ 15-16; (finding, where a claim was pending when the notice of appeal was filed and no Rule 304(a) finding was made, that the notice of appeal took effect under Rule 303(a)(2) when the outstanding claim was resolved, without considering the introductory language of Rule 303(a)(2)); *cf., People ex rel. Madigan v. Illinois Commerce Comm'n*, 407 Ill. App. 3d 207, 213 (2010) (finding that under Rule 303(a)(2) the petitions for review filed in the Second District appellate court while applications for rehearing were still pending became effective when the applications were disposed of); *Suburban Auto Rebuilders, Inc., v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 96-98 (2009) (a pending postjudgment petition for attorney fees rendered the notice of appeal premature but became effective when the posttrial motion was resolved). Yet, we find our determination gives effect to all of Rule 303(a)(2)'s plain language and aligns with the specific purpose of the amendment to that rule. We also find this furthers the policy disfavoring piecemeal appeals.

¶ 39                                    B. Rule 137 Sanctions

¶ 40    We now turn to Michele's closely related contention that the trial court failed to impose

sanctions under Rule 137 when Robert falsely argued that he need not turn over property

distributed within the order dissolving the parties' marriage because that order was not

immediately enforceable. We review this matter for an abuse of discretion. *Freedom Mortgage*

*Corp. v. Olivera*, 2021 IL App (2d) 190462, ¶ 26.

¶ 41    Rule 137 prohibits parties from filing pleadings for an improper purpose, such as to cause

unnecessary delay, harass other litigants or needlessly increase litigation costs. *In re Marriage of*

*Pitulla*, 256 Ill. App. 3d 84, 90 (1993). Additionally, sanctions for violating Rule 137 may take

the form of an award of reasonable attorney fees. *Id*. The burden of proof, however, lies with the

party seeking sanctions. *Katsoyannis v. Findlay*, 2016 IL App (1st) 150036, ¶ 54.

¶ 42    In determining whether sanctions are warranted, courts consider the objective

reasonableness of the party in question at the time of filing and whether that party made a

reasonable inquiry into the facts supporting his filing. *Id*. A trial court may impose sanctions

where a party asserts a proposition contrary to established legal precedent. *Mohica v. Cvejin*,

2013 IL App (1st) 111695, ¶ 51. Conversely, Rule 137 does not punish parties for making novel

or losing arguments. *Katsoyannis*, 2016 IL App (1st) 150036, ¶ 56.

¶ 43    Michele asserts that the trial court abused its discretion by not sanctioning Robert for

taking an objectively false claim that the court ultimately rejected. Specifically, she contends that

Robert's challenge to the enforceability of the June 21, 2018, order dissolving the parties'

marriage and awarding them property was frivolous.

¶ 44      As stated in our discussion of jurisdiction, the dissolution order expressly left pending

Michele's petition for contribution to her attorney fees.[4] *In re Marriage of Leopando*, 96 Ill. 2d

at 119 (recognizing that a petition for dissolution involves a single claim composed of ancillary

issues). Consequently, the judgment dissolving the parties' marriage and awarding them property

was not final and could not have been appealed even with a Rule 304(a) finding. Michele

nonetheless argues that enforcement presents a different question.

¶ 45      Although Rule 304(a) governs certain interlocutory appeals, that rule also expressly states

that absent a Rule 304(a) finding, "any judgment that adjudicates fewer than all the claims or the

rights and liabilities of fewer than all the parties *is not enforceable* or appealable and is subject to

revision at any time before the entry of a judgment adjudicating all the claims, rights, and

liabilities of all the parties." (Emphasis added.) Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016); see also

*Centrue Bank v. Voga*, 2017 IL App (2d) 160690, ¶ 34 (stating that "until the entry of a final

judgment disposing of all the claims in the case, an unenforceable and unappealable judgment

remains subject to revision pursuant to Rule 304(a)); *Bank of Matteson v. Brown*, 283 Ill. App.

3d 599, 601, 603 (1996) (where a citation respondent argued that the underlying judgment was

unenforceable absent a special Rule 304(a) finding because that judgment was against fewer than

all the defendants, the reviewing court agreed that the underlying judgment was neither

appealable nor enforceable). If a judgment that fails to dispose of every claim generally cannot

be enforced, it makes little sense that a judgment that has not disposed of even one claim would

be enforceable without a specific rule stating as such. Here, the trial court had not adjudicated a

single "claim" until at least March 2019, when the court ruled on Michele's contribution request,

or April 2019, when the court memorialized that ruling in writing.

---

[4]We also note that below, Robert argued that the court should have ruled upon the matter of contribution under section 503(j) before entering the dissolution order.

¶ 46     Section 413(a) of the Act states that "[a] judgment of dissolution of marriage *** is final when entered, subject to the right of appeal." (Emphasis added.) 750 ILCS 5/413(a) (West 2018). That same section states, however, that "[a]n order requiring maintenance or support of a spouse or a minor child or children entered under this Act or any other law of this State shall not be suspended or the enforcement thereof stayed pending the filing and resolution of post-judgment motions or an appeal." 750 ILCS 5/413(a) (West 2018); see also 735 ILCS 5/2-1203(b) (West 2018) (stating that "[e]xcept as provided in [section 413(a) of the Act], a motion filed in apt time stays enforcement of the judgment"). This acknowledges that generally, a postjudgment motion filed in a dissolution case stays enforcement of the judgment. See 750 ILCS 5/105 (West 2018) (stating that "provisions of the Civil Practice Law shall apply to all proceedings under this Act, except as otherwise provided in this Act"). Were it otherwise, there would be no need to carve out exceptions for maintenance and child support orders.

¶ 46     Here, however, Michele was not seeking the enforcement of a maintenance or child support order prior to the filing of postjudgment motions. Instead, she was seeking to enforce an order distributing the parties' property before the parties had been given an opportunity to file motions to reconsider. In addition, section 413(a) did not carve out an enforcement exception for property awards. To allow Michele to enforce the June 2018 property jurisdiction at that juncture would seemingly run afoul of the Act's goal of making "provision for the preservation and conservation of marital assets during the litigation." 750 ILCS 5/102 (West 2018).

¶ 47     We recognize that in finding the June 21, 2018, was enforceable, the trial court found that Robert had not adequately explained how his position could coexist with the reality that immediately enforceable orders were routinely issued in dissolution of marriage cases. Briefly stated, legislation, supreme court rules and case law have identified several immediately

enforceable or appealable orders that arise in dissolution cases. See *e.g.*, 750 ILCS 5/508(c) (West 2018) (stating that a final hearing on an attorney's petition for setting final fees and costs against his own client is a distinct cause of action that "shall not affect appealability or enforceability of any judgment or other adjudication in the original proceeding"); Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016) (stating that a custody order is immediately appealable); *In re Marriage of Mathis*, 2012 IL 113496, ¶ 32 (stating that the date of the order dissolving the marriage, as opposed to the judgment resolving the entire dissolution claim, is the date that the parties are free to remarry); 750 ILCS 5/501 (West 2018) (authorizing temporary relief while proceedings are pending); see also *In re Marriage of Andres*, 2021 IL App (1st) 191146, ¶ 57 (recognizing that the trial court retains indefinite jurisdiction to enforce a final order for dissolution of marriage). We are unaware of any rule, however, that expressly make orders awarding property final before other ancillary matters have been resolved and before the parties have been permitted to pursue a motion to reconsider.

¶ 48    In finding that the property distribution was enforceable as of June 2018, the trial court stated at various times that it set maintenance in light of the amount of assets Michele was to receive, that the property distribution was "integrally tied to the maintenance order" and that the court "gave assets in lieu of maintenance." Yet, we are not convinced that this converted the court's property award into an immediately enforceable maintenance award under the terms of the Act. Additionally, the intertwined nature of all of these ancillary issues demonstrates why the better practice is to resolve all issues within the dissolution claim at the same time.

¶ 49    Even assuming that the June 2018 order awarding Michele property was enforceable, we find no abuse of discretion in denying her motion for sanctions. Robert presented a reasonable, good faith argument that the order's distribution of property was not immediately enforceable.

¶ 50                                  C. Attorney Fees

¶ 51    Conversely, we find the trial court abused its discretion by awarding attorney fees to

Michele under Section 508(b) of the Act on February 4, 2020.[5] *In re Marriage of Heroy*, 2017 IL

120205, ¶ 13 (setting forth an abuse of discretion standard).

¶ 52    Section 508(b) states as follows:

> "In every proceeding for the enforcement of an order or judgment when the court
>
> finds that *the failure to comply with the order or judgment was without compelling cause*
>
> *or justification*, the court shall order the party against whom the proceeding is brought to
>
> pay promptly the costs and reasonable attorney's fees of the prevailing party. *** If at
>
> any time a court finds that a hearing under this Act was precipitated or conducted for any
>
> improper purpose, the court shall allocate fees and costs of all parties for the hearing to
>
> the party or counsel found to have acted improperly. Improper purposes include, but are
>
> not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost
>
> of litigation." (Emphasis added.) 750 ILCS 5/508(b) (West 2018).

"The party that fails to comply with an order bears the burden of proving that compelling cause

or justification for the noncompliance exists." *In re Marriage of Ackerley*, 333 Ill. App. 3d 382,

397 (2002). Additionally, a finding of contempt is not required to award attorney fees under

---

[5]We briefly reject Robert's assertion that the trial court lacked jurisdiction to consider Michele's postjudgment motion for attorney fees. The trial court's order of July 24, 2019, resolved all pending claims and Michele filed a timely notice of appeal on August 16, 2019. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). She also, however, filed a timely postjudgment motion on August 21, 2019. 735 ILCS 5/2-1203 (West 2018).  Given that a motion for contribution is a substantive component of a dissolution claim, we find this was essentially a motion to modify the judgment and it extended the trial court's jurisdiction, notwithstanding that a notice of appeal was previously filed. Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017). Specifically, a timely postjudgment motion acts as a stay of a previously filed notice of appeal, which then takes effect when the trial court disposes of the postjudgment motion. *Davis v. Davis*, 2019 IL App (3d) 170744, ¶ 21. Thus, where a litigant files a timely postjudgment motion, a previously filed notice of appeal does not deprive the trial court of jurisdiction to consider the postjudgment motion. See *Id*. ¶ 22.

section 508(b). *Id.* Yet, courts must consider whether the party from whom fees are sought acted in good faith, even if he ultimately was incorrect. See *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 1127 (2008).

¶ 53    Here, in awarding Michele fees under section 508(b), the court cited "the amount of work that was undertaken here to enforce my judgment, *which I have always believed* was enforceable, perhaps not final and appealable, but enforceable." (Emphasis added.) That being said, the focus should have been on Robert's belief, not that of the court. Additionally, the court's previous comments in denying Michele's motion to hold Robert in contempt indicate that the trial court found he reasonably believed in good faith that the property distribution was not immediately enforceable, even if that belief was ultimately incorrect. Specifically, the court found that "the original question was very close for me on enforceability, and I firmly believe that Mr. Browne was not being contumacious of this Court's judgment." Furthermore, the court's later comments in awarding fees do not suggest that the court had changed its mind regarding Robert's reasonable, good-faith belief or that the court had found Robert acted with an improper purpose. While Michele argues that the court's previous decision not to hold Robert in contempt or impose Rule 137 sanctions has no bearing on section 508(b) award of fees, we find the court's *reason* for declining to find him in contempt is inconsistent with a finding that he failed to comply with the dissolution order's property distribution without compelling cause or justification. Accordingly, we vacate the order awarding Michele attorney fees under section 508(b).

¶ 54                                  D. Maintenance Award

¶ 55    We next address Michele's several challenges to the maintenance award.

¶ 56 The trial court's determination as to the appropriate amount of a maintenance award will not be reversed absent an abuse of discretion. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 26. This occurs where no reasonable person would hold the court's view. *In re Marriage of Nord*, 402 Ill. App. 3d 228, 292 (2010). When a party challenges the factual findings underlying a maintenance award, however, the court's findings will not be reversed unless they are against the manifest weight of the evidence. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 30. Findings are against the manifest weight of the evidence if the opposite conclusion is clearly evident, or the findings are arbitrary, unreasonable and not based on any evidence. *Id.* That being said, the trial court need not make specific findings regarding the reasons behind its determinations. *In re Marriage of Nord*, 402 Ill. App. 3d at 292.

¶ 57 Before awarding maintenance, the trial court must consider 14 factors, including the parties' standard of living during marriage and the tax consequences for each party. 750 ILCS 5/504(a)(7), (11) (West 2018). Additionally, a maintenance award generally must be based on the parties' circumstances at the evidentiary hearing, not speculation. *In re Marriage of Ossek*, 2021 IL App (1st) 200268, ¶ 56. The benchmark for setting a maintenance amount "is the recipient's reasonable needs in light of the standard of living established during the marriage." *In re Marriage of Nord*, 402 Ill. App. 3d at 293. Furthermore, a spouse seeking maintenance need not sell her assets or otherwise impair her capital in order to maintain the manner of living established during marriage. *Id.* at 304.

¶ 58                                    i. Gross-up Formula

¶ 59 Michele first asserts that the trial court made a mathematical error in calculating maintenance. Specifically, the trial court found that Michele's monthly expenses totaled approximately $24,000. In addition, the court found that "[t]o maintain Michele's marital

lifestyle, she would need a net of approximately $288,000 ($24,000 x 12) annually, grossed up to approximately $400,000 for state and federal taxes (at close to 40%)." Michele argues that while the court intended for Michele to have $24,000 per month after taxes, the court applied an incorrect formula to arrive at the total of $400,000. Essentially, the court added 40% of Michele's annual expenses ($115,200) to her total annual expenses ($288,000), for a total of $403,200, or approximately $400,000.

¶ 60    Michele argues, however, that to gross-up this sum so that Michele receives $288,000 after taxes, a different formula applies. According to Michele, one must deduct the total tax rate from the number one to obtain the net percent: 1 - 0.4 = 0.6. Then, the net payment ($288,000) must be divided by the net percent (0.6) to determine the gross payment required, in this case, $480,000. Thus, Michele argues that the court's determination fell $80,000 short of her actual needs. [6]

¶ 61    We agree with Michele's general premise that this court may take judicial notice of mathematical laws and formulas that are generally accepted as irrefutable. *Theofanis v. Sarrafi*, 339 Ill. App. 3d 460, 471 (2003). Yet, such mathematical laws and formulas do not live in a vacuum, and it is still incumbent upon the parties to provide the necessary context in order to determine which mathematical laws and formulas apply. Michele's brief fails to provide any factual context to explain why one formula is more appropriate than the other. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (stating that points not argued are forfeited). While it appears that the two formulas reflect different tax consequences, Michele has provided no meaningful

---

[6]We reject Robert's suggestion that $80,000 constitutes a *de minimis* discrepancy and necessarily satisfied the trial court's goal of reaching an approximate amount. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 26 (stating that "Unlike the appellate court, we are not convinced, based on our reading of the entirety of the opinion, that this statement indicates the circuit court intended to award exactly 25% of Heroy's cash flow as maintenance").

explanation for the discrepancy. We also find that if Michele wanted the trial court to apply a particular formula, she should have asked the court to do so. Under these circumstances, we find no abuse of discretion.

¶ 62                                    ii. Chicago Residence

¶ 63    Next, Michele challenges the trial court's exclusion of certain items from her expenses, beginning with expenses incurred for her post-separation Chicago apartment. She argues that the court failed to consider her two-home lifestyle. The record does not support this proposition, however.

¶ 64    Newman determined that Michele needed $39,000 for monthly expenses. In addition, the trial court began with that figure and deducted unnecessary expenses from it. Given that the court used Newman's $39,000 total as her starting point, it follows that the court considered any claimed expense that was not expressly deducted. Newman's $39,000 total included expenses labeled, "Household- Michele Rental." That total also included separate household expenses for a property in Lake Bluff, which the parties no longer rented. While the trial court deducted the Lake Bluff expenses from Newman's total, the court did not deduct the expenses labeled "Household- Michele Rental." Nor did the court deduct expenses for the Georgia Home. Accordingly, the record rebuts Michele's assertion that the court failed to take her two-home lifestyle into account. We find no error.

¶ 65                                    iii. Healthcare

¶ 66    Michele additionally contends that the trial court erroneously deducted $5,300 in monthly out-of-pocket medical expenses for Michele's breast cancer treatment in Irvine, California.

¶ 67    As stated, Michele was diagnosed with breast cancer in January 2017.  Following radiation, she sought additional treatment from Dr. Virginia Von Schaefer, an oncologist who

graduated from Columbia University in New York and practiced at the Center for New Medicine. Upon learning that Michele still had 2.4 cancer cells circulating in her body per 7.5 milliliters of blood, Dr. Schaefer prescribed dendritic cell treatment, supplements to boost Michele's immune system and mistletoe treatment. Her amount of circulating cancer cells diminished from 2.4 to 2.0. Michele was to repeat this treatment until that number was zero, which would likely take a couple years. Furthermore, the treatment cost $5,300 per month and was not covered by her insurance. Michele testified as to her understanding that this treatment was medically necessary, While Robert's attorney suggested that this was an illegitimate expense that insurers found to be unnecessary and questioned Dr. Schaefer's wholistic approach, he presented no evidence in support of the theory that the treatment was unnecessary.

¶ 68    The trial court found that "the vague testimony provided by Michele regarding this treatment in California does not speak to the necessity of the treatment." The benchmark of setting maintenance, however, "is the recipient's reasonable needs *in light of the standard of living established during the marriage*." *In re Marriage of Nord*, 402 Ill. App. 3d at 293. Given the high standard of living enjoyed by the parties during marriage, strict medical necessity is not controlling if it would not place Michele in the same standard of living she enjoyed during marriage.

¶ 69    The trial court found her treatment in California did not qualify as a reasonably necessary expense because Dr. Von Schaefer did not coordinate the treatment with Michele's physicians at the University of Chicago. Yet, we cannot agree that it is unreasonable for a cancer patient to obtain an independent second opinion and possibly treatment from another doctor. Furthermore, the court's finding assumes a level of coordination between medical providers that may or may

not exist, however ideal it may be in certain circumstances. While the court found her testimony about the California treatment was vague, we fail to see what further information was necessary. Because Michele showed that this treatment was reasonably necessary in light of the high standard of living she enjoyed during marriage, the court erred by excluding it from her expenses. We reverse and remand for the trial court to consider this as an expense to be considered in setting maintenance.

¶ 70    Michele briefly argues that the trial court did not take into account the cost of insurance in calculating her expenses.  Newman's expense report did not include a line item for health insurance because Robert had provided that during marriage. Michele testified, however, that to obtain insurance comparable to that which she had during marriage would cost approximately $800 or $900 per month. We direct the court to consider this expense on remand.

¶ 71                                    iv. Interest Income

¶ 72    Michele further contends that the trial court improperly applied a "conservative five percent" interest rate in estimating the prospective return on her investments because "there was no evidence in the record supporting the use of a 5% ROI." She contends that 5% is overly optimistic.

¶ 73    A trial "court may take judicial notice of the fair earning powers of money or invested capital over a certain period of time." *In re Marriage of Zeman*, 198 Ill. App. 3d 722, 733 (1990); *In re Marriage of Ryman*, 172 Ill. App. 3d 599, 612 (1988). Thus, notwithstanding Michele's contention to the contrary, the record need not contain specific evidence supporting the court's finding that 5% was appropriate. See *In re Marriage of Smith*, 100 Ill. App. 3d 1126, 1130 (1981) (rejecting one spouse's argument "that expert witnesses must be called to testify regarding return on investment" and finding the court's estimate of 8% was appropriate); *In re*

*Marriage of Ryman*, 172 Ill. App. 3d at 612 (stating that "[d]ocumentary evidence was admitted as to these investments from which the trial court could have estimated a reasonable rate of return to allow some approximation of the income-producing ability of these funds"). We also note that Michele has not directed us to any portion of the record setting forth evidence that a lower rate would be appropriate. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (stating that argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); see also *In re Marriage of Albrecht*, 266 Ill. App. 3d 399, 403 (1994) (stating that a reviewing court will not reverse the trial court's decision where a party has failed to produce evidence of value despite having had ample opportunity to do so).

¶ 74    Michele also urges us to take judicial notice of the U.S. Treasury yield rates in effect at the time of the trial proceedings, all of which were lower than 5%. She has not, however, directed us to a portion of the record showing that she asked the court to take judicial notice of a lower rate. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We cannot find the trial court abused its discretion by failing to apply a rate that was never brought to the court's attention.

¶ 75                                D. The Georgia Home

¶ 76    Next, Michele challenges the trial court's determination that the Georgia Home was marital property. Under section 503(a), " 'marital property' means all property *** acquired by either spouse subsequent to the marriage," except for several enumerated exceptions that constitute non-marital property. 750 ILCS 5/503(a) (West 2018). Those non-marital exceptions include "property acquired by gift, legacy or descent or property acquired in exchange for such property." 750 ILCS 5/503(a)(1) (West 2018). Additionally, "all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of

- 27 -

invalidity of marriage is presumed marital property." 750 ILCS 5/503(b)(1) (West 2018). This presumption includes property held in only one party's name. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 52; *In re Marriage of Foster*, 2014 IL App (1st) 123078 ¶ 69.

¶ 77    To overcome the presumption that property is marital, a party must show "through clear and convincing evidence that the property was acquired by a method listed in subsection (a) of this Section or was done for estate or tax planning purposes or for other reasons that establish that a transfer between spouses was not intended to be a gift." 750 ILCS 5/503(b)(1) (West 2018). The burden of proof falls upon the party claiming that property is non-marital (*In re Marriage of Weiler*, 258 Ill. App. 3d 454, 461 (1994)) and courts resolve any doubts regarding the classification of property in favor of finding the property to be marital, rather than non-marital (*In re Marriage of Budorick*, 2021 IL App (1st) 190994, ¶ 41). We will not disturb a trial court's classification of property unless that determination is contrary to the manifest weight of the evidence. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 52.

¶ 78    Michele maintains that Robert gifted the Georgia Home to her. "A gift is a voluntary transfer of property by one person to another where the donor manifests an intent to make such a gift and irrevocably delivers the property to the donor." *In re Marriage of Weiler*, 258 Ill. App. 3d at 463. The requisite elements are donative intent, the donor's parting with the exclusive control over the subject of the gift and his delivery of the gift to the donee. *Moniusko v. Moniusko*, 238 Ill. App. 3d at 529. No gift has been made "unless the donor has relinquished all present and future dominion and power over the subject matter of the gift." *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 55. Furthermore, the party claiming that a gift was made has the burden of proof to establish donative intent through clear and convincing evidence. *Moniusko*, 238 Ill. App. 3d at 529. "Donative intent is determined at the time of the alleged

transfer of property and is controlled by what the parties said or did at the time of the transaction, and not what is said at a later time." *Koerner v. Nielsen*, 2014 IL App (1st) 122980, ¶ 19. In assessing whether a gift was made, witness credibility and evidentiary conflicts are matters within the trial court's discretion. *Moniusko*, 238 Ill. App. 3d at 530.

¶ 79    Here, the trial court made extensive findings regarding the Georgia Home and found that while it was a close question, Michele had not met her burden of demonstrating that a gift was made. The court found that "[b]oth parties presented as intelligent and credible," but ultimately determined that Robert was more credible.

¶ 80    The trial court found that Robert was mild-mannered and reserved whereas Michele appeared to be outspoken and controlling. Additionally, the court found that Michele and Greeman's testimony -that Robert intended the property to be a gift as an apology for failing to sell the Elan Pharmaceutical stock- was "overly biased." This is likely because the testimony was self-serving for Michele and because Greeman was her brother. More importantly, however, Michele and Greeman's testimony that Robert spoke about wanting Michele to have the Georgia Home did not mean Robert intended her to have it as a gift of nonmarital property.

¶ 81    According to Michele, she was reluctant to go forward with the purchase of the Georgia Home due to the stock depreciation, but Robert said, "I want you to have the house. I will make it up to you. It is yours. Please take the house. The kids know about the house already." Michele also testified, "[h]e pleaded with me to buy the house. That it was mine, that he would make it up to me, those were his words. He is giving it to me." Even taking Michele's allegations as true, the trial court was not required to find Robert intended the George Home to be the nonmarital property of Michele alone.

¶ 82    Michele argues that the trial court erroneously considered that the Georgia Home comprised about 30% of the entire marital estate in determining that Robert did not intend to make a gift. Specifically, she suggests that an asset's relative percentage of the marital estate is only relevant when addressing whether one spouse's original non-marital property became marital property upon being transferred into joint ownership. Michele, however, has cited no authority holding that this factor is irrelevant when considering whether a gift of non-marital property was made. Ill. S Ct. R. 341(h)(7) (Oct. 1, 2020). Additionally, common sense dictates that it is entirely relevant. Taking this notion to the extreme, one spouse would likely not intend to make a gift of an asset to another spouse if that asset would represent 99% of the marital estate.

¶ 83    Michele also argues that the trial court improperly considered that Robert participated in procuring the Georgia Home and funded the home's fixtures and finishes because those facts did not speak to Robert's intent *at the time the home was purchased and titled in Michele's name.* She similarly argues that her colloquial references to the property as "our home" was not relevant to Robert's intent when it was purchased. Yet, the court was entitled to find this reflected Michele's true understanding of who the property belonged to and somewhat corroborated Robert's testimony that he had no intent to make a gift when the property was purchased. The trial court was entitled to find that Robert testified credibly that the Georgia Home was put in Michele's name for tax purposes.

¶ 84    Michele nonetheless argues that the trial court confused motive and intent. She relies heavily on certain statements made in *In re Marriage of Weiler*, 258 Ill. App. 3d at 463. There, the reviewing court found the petitioner sustained her burden of proving that property was a gift where the respondent testified that he knew the funds in question would be in the petitioner's

sole control and that he intended the funds to be a gift to petitioner, rendering it irrelevant that the respondent claimed he made the gift for tax purposes. *Id*. In that context, the court stated, "The fact that the respondent made the gift for tax purposes is of no consequence." *Id*. The court further stated that "the motive of the donor is immaterial." *Id*.

¶ 85    We decline to remove *In re Marriage of Weiler's* statement that motive is irrelevant from the context of a spouse expressly testifying that he intended to make a gift. While motive and intent are not interchangeable, one may certainly inform the other. *Id*. (stating that "Motive is what prompts a person to act or fail to act, and intent refers only to the state of mind with which the act is done or omitted"). In addition, the Act expressly states that the acquisition of property for tax planning purposes is relevant in classifying the property. See 750 ILCS 5/503(b)(1) (West 2018).

¶ 86    Michele further argues that Robert's explanation of placing the property in Michele's name for estate planning purposes was not credible. Robert testified that before value of the Elan stock dropped, "the success of [Elan] was distorting, in a good way up until the fall, our -- our asset mix in every possible way. It was being concentrated in a few accounts." At that time, Michele had already started to ask that the Georgia Home be titled in her name. "[T]hat's when I started thinking about the estate plan." He testified that some accounts were solely in his name, some were solely in her name, and it would all still be marital property, which he knew from a joke that his estate planner had told. Contrary to Michele's argument, the trial court was not required to find that Robert's testimony about estate planning purposes "was simply a post hoc claim that he made to claw back his gift of the Georgia Home from Michele." Even Michele testified that she "learned in 2004 that we need to divide some of our assets to take advantage of the exclusions if one of us were to die and the other assets would go unencumbered to the other

without tax consequence." The trial court reasonably found that this acknowledgment rendered Robert's explanation credible.

¶ 87    Moreover, Robert testified that even after the Elan stock fell, "[t]he estate would have unnecessarily paid taxes on $2 million" if it was not held separately.[7] While Robert acknowledged that he was able to testify to the exclusion amount that applied in 2008 only because he had looked it up the day before, that does not show that he was unaware of that amount in 2008. Finally, the trial court was not required to find Robert disingenuous merely because there may have been other ways to accomplish his tax goals.

¶ 88    In light of our determination that the trial court properly found that Robert did not intend to gift the Georgia Home to Michele, we need not consider the other elements that must be satisfied to show that a gift was made.

¶ 89                                    III. Conclusion

¶ 90    We dismiss appeal no. 1-08-1001 and appeal number 1-08-1020. We vacate the trial court's award of attorney fees on February 4, 2020, reverse the trial court's decision to exclude Michele's California cancer treatment from her claimed expenses and remand for further proceedings to account for that expense. We affirm the judgment in all other respects.

¶ 91    No. 1-18-1558, Dismissed.

¶ 92    No. 1-19-0847, Dismissed.

¶ 93    No. 1-19-1662, Affirmed in part, reversed in part.

        Cause remanded.

---

[7]Given the tax rate in 2008, the estate would have been taxed $900,000 had the $2 million in property not been separated from the marital estate.

¶ 94     No. 1-20-0324, Affirmed in Part and Vacated in Part.